# TUCKER *et al. v.* GURLEY *et al.*

(Division A.    Oct. 19, 1936.    Suggestion of Error Overruled Nov. 30, 1936.)

[170 So. 230.    No. 32323.]

**L. A. Smith, Sr.,** of Holly Springs, for appellants.

Fred B. Smith, of Ripley, for appellants.

Lester **G. Fant, Sr.** and **Jr.**, of Holly Springs, for appellees.

Argued orally by **L. A. Smith, Sr.**, for appellant, and by **Lester G. Fant, Jr.**, for appellee.

**Cook, J.**, delivered the opinion of the court.

This is the second appeal in this cause. On the former appeal a judgment in favor of the defendants was reversed, and in the opinion, which is reported in 170 Miss. 565, 155 So. 189, the facts surrounding the unfortunate tragedy in which the husband of the appellee and his brother were killed, are set out at length, and we will here state only such additional facts as we deem necessary to an understanding of the issues to be decided.

This suit was originally filed in Marshall county against the sheriff of that county, the surety on his official bond, and two of his deputies. Upon remand of the cause, after reversal of the former appeal, the appellees filed a motion for a change of venue on the grounds that, on account of prejudice existing in the public mind, the undue influence of the adverse parties, and the publicity caused by three former trials involving the same facts, they could not obtain a fair and impartial trial in Marshall county. Upon the lengthy testimony offered by the respective parties on this motion, the court granted a change of venue, and entered an order removing the cause to Union county, and appellants assign as error the action of the court in so doing.

Upon this assignment, it is the contention of appellants that by virtue of section 495, Code 1930, the venue of civil actions against public officers is fixed absolutely in the county of the household and residence of such officers, and that, consequently, the court was without power to remove this cause out of the county of the household and residence of the officers who were parties defendant. At the time of the removal, the term of office of R. F. Dancy, sheriff of Marshall county, had expired and he had died, but the defendant, Butler Overton, con-

tinued as a deputy under the succeeding sheriff, and the contention is based upon the right of this deputy to have the suit continued to a conclusion in the county of his household and residence.

Section 495, Code 1930, provides, among other things, that ''If a citizen resident in this state shall be sued in any action, not local, out of the county of his household and residence, or if a public officer be sued in any such action, out of the county of his household and residence, although a surety or sureties, or some of the sureties, on his bond, or other joint defendant, sued with him, be found or be subject to action in such county, the venue shall be changed, on his application, before the jury is impaneled, to the county of his household and residence.'' Prior to 1926, this section merely provided that, ''If a citizen resident in this state shall be sued in any action, not local, out of the county of his household and residence, . . . the venue shall be changed, on his application, before the jury is impaneled, to the county of his household and residence,'' and the provision with reference to public officers first appeared in our statutory laws in chapter 155, Laws of 1926. Prior to the enactment of chapter 155, Laws of 1926, the court, in Dean v. Brannon, 139 Miss. 312, 104 So. 173, 175, held that in an action against a sheriff and the surety on his official bond, the cause was properly brought in the county where the surety corporation was found with a place of business and an agent subject to process, and the amendment of the then existing statute, by the enactment of chapter 155, Laws of 1926, was manifestly intended to meet this decision of the court, and to require that the venue of civil actions against a public officer shall be laid in the county of the officer's household and residence, and in the event it is not so laid, that such officer shall be entitled to a change of venue to the county of his household and residence.

But the provision of the statute fixing the venue of actions against a public officer in the county of his house-

hold and residence does not prevent the full operation of the statute providing for a change of venue, section 500, Code 1930, when conditions develop which cause the statutory right to a change of venue to arise. The provisions of section 495, Code 1930, giving to a public officer sued in any action out of the county of his household and residence the right to have the venue changed to the county of his household and residence, does not confer any higher or different right from that granted to any other citizen resident in this state who is sued in any action, not local, out of the county of his household and residence, and the amendment of this statute was merely intended to guarantee to a public official the right to remove a suit to the county of his household and residence, although the surety on his official bond may be found doing business in the county where the suit was originally filed.

Section 500, Code 1930, authorizing a change of venue upon certain stated grounds and conditions, was intended to provide a method by which a fair and impartial trial could be obtained, whenever on account of the undue influence of the adverse party, prejudice in the public mind, or other sufficient cause, a fair and impartial trial cannot be obtained in the county in which the venue was originally fixed, and whenever conditions arise which, by virtue of this statute, authorize a change of venue, the court may, and, in the interest of justice, should, grant a change. The sufficiency of the evidence upon which the court granted the change of venue is not here challenged, and no error was committed in granting the change.

The evidence bearing upon the acts of the deputy sheriffs and the deceased Gurleys immediately before and at the time of the fatal shooting is sharply conflicting. The evidence clearly shows that Glenn Gurley was the first actor in the incidents which almost immediately led to the shooting. According to the testimony for the appellees, the jury would have been warranted in find-

ing that the deceased Gurley was shot at a time when he was doing nothing to indicate an intention to kill any of the officers, or do them great bodily harm, while, under the evidence for the appellants, the jury would have been warranted in finding that Leslie Tucker was in real or apparent danger of losing his life, or suffering great bodily harm at the hands of Lloyd and Glenn Gurley, and that the shooting was justifiable on the ground of the real or apparent necessity to save said Tucker from death or great bodily harm. In this state of the record, the court granted the appellees three instructions, telling the jury, in effect, that the killing of the Gurleys was not justifiable in law unless it was done in defense of some person who was in actual danger of losing his life, or suffering great bodily harm at the hands of Lloyd Gurley. The parts of the three instructions bearing upon the particular point under consideration read as follows:

"The court instructs the jury for the plaintiffs that even though Butler Overton and Leslie Tucker were deputy sheriffs, and were acting in their official capacity, they would not be justifiable in law in killing Lloyd Gurley unless they did the killing and shooting in defense of himself or of some other person who was in actual danger of losing his life or suffering great bodily harm at the hands of the said Lloyd Gurley."

"And if the jury after considering all the evidence in the case and the instructions of the court are satisfied that at the time Lloyd Gurley was killed the defendants were not in actual danger of losing their lives or suffering some great bodily harm at the hands of Lloyd Gurley, the jury should find its verdict for the plaintiffs."

"And if the jury believe from all of the evidence in this case that Lloyd Gurley was shot and killed by the defendant Overton for the commission of a misdemeanor against the person of Deputy Tucker, at a time when said Tucker and Overton were not in actual danger of losing their lives or suffering some great bodily harm

at the hands of Lloyd Gurley, then the jury should find for the plaintiffs."

These instructions are manifestly erroneous in that they limit the right of the officers to act in self-defense to the existence of actual danger of losing their lives, or suffering great bodily harm at the hands of Lloyd Gurley. The right of these officers to act on reasonable appearances, and to defend themselves against apparent danger was thereby expressly excluded. We do not understand, however, that the appellees contend that these instructions are not erroneous, but it is insisted that the errors therein were cured by several instructions granted to the appellants, which informed the jury that the killing of the deceased was justifiable if the officers, situated as they were, had reasonable ground to believe and did believe, from the acts of the deceased and his brother, that Leslie Tucker was in danger of death, or suffering great bodily harm at the hands of said Lloyd and Glenn Gurley.

In our opinion, the errors in these instructions granted to the appellees were not mere omissions which were supplied by appellants' instructions, but the instructions, as granted, constituted an express limitation upon the right of self-defense, and directed the jury to return a verdict for the appellees if they believed that the officers were in no actual danger. As we construe these instructions, they are in conflict with those granted for the appellants, and being thus in conflict, the instructions furnished no sufficient guide to the jury as to the law by which they were to be controlled in making up their verdict.

The appellants also complain of the admission of testimony to the effect that handcuffs were placed upon Glenn Gurley. This occurred before Glenn Gurley had fallen, and at a time when it was not known, and could not have been known, that he was seriously or fatally wounded, and it was so closely connected with the principal facts as to be admissible as a part of the res gestae.

Likewise, there was no error in sustaining the objection to a question seeking to show that at some time within twelve months prior to the shooting, Lloyd Gurley had made a threat against one of the officers present, other than the one who was the object of the alleged, assault by the Gurleys. The question as framed would have permitted the introduction of a threat made at a time too remote to be of evidential value and against a party who had not been the object of the alleged assault on the part of the Gurleys. Shaw v. State, 79 Miss. 21, 30 So. 42; Walker v. State, 140 Miss. 238, 105 So. 497.

It is also contended that the court erred in proceeding with the trial without same being revived or dismissed as against R. F. Dancy, who had died since the institution of the suit. R. F. Dancy died after the first trial in which there was a judgment in favor of the defendants, and while the cause was pending in this court on appeal from that judgment, it was revived against the administrator of Dancy's estate, and thereafter the administrator of the estate continued as a party to the suit in subsequent proceedings. In Cannon v. Cooper, 39 Miss. 784, 789, 80 Am. Dec. 101, in speaking of revivals in the Supreme Court, the court said: "When made parties, they must become so for all the purposes of the suit, whether the judgment be final in this court or the cause be remanded to the court below for further proceedings. If the cause be remanded, it is a mere continuation of it, and the parties to it, who were such in this court, would necessarily be the parties to it in all subsequent proceedings, unless some change was made in a way recognized by law. For, having been regularly introduced as parties to it, it would be vain and useless to take other steps and incur further expense to make them such in its further progress."

The other errors complained of deal with matters which probably will not arise on a new trial.

For the errors indicated above in the instructions, the

judgment of the court below will be reversed, and the cause remanded.

Reversed and remanded.