MISSISSIPPI STATE HIGHWAY COMMISSION *v.* ROGERS

No. 41708 March 20, 1961 128 So. 2d 353

*Boyd & Holifield, Welch, Gibbes & Graves*, Laurel, for appellant.

James D. Hester, George Maxey, Laurel, for appellee.

KYLE, J.

This case is before us on a second appeal by the Mississippi State Highway Commission from a judgment in the sum of $100,000 rendered in favor of the appellee C. B. Rogers as compensation and damages for the taking of 6.52 acres of land for public use in the construction of a new interstate highway between the City of Laurel and the Town of Ellisville in Jones County.

The petition for the condemnation of the above mentioned parcel of land was filed by the State Highway Commission in the county court of the Second Judicial

District of Jones County on April 7, 1958. Upon motion of the petitioner, and by agreement of the parties, an order was entered on May 13, 1958, transferring the case to the county court of the First Judicial District of Jones County, in which judicial district the land was situated. The case was tried before a jury at the June 1958 term of the county court, and a verdict was rendered in favor of the appellee Rogers for the sum of $120,000, and judgment was entered in favor of the appellee for that amount. The appellant filed a motion for a new trial, which was overruled. An appeal was then taken to the circuit court. The circuit court found a number of errors in the trial before the county court, and ordered that the judgment be reversed and a new trial granted unless the appellee should accept a remittur of $18,000. The appellee accepted the remittur on January 14, 1959, and the judgment, as thus reduced to $102,000 was affirmed. From that judgment the first appeal to this Court was taken; and on May 25, 1959, this Court reversed the judgment of the circuit court and remanded the case to the circuit court for a new trial. The reversal, as stated in the opinion of the Court, was based upon the numerous errors committed by the trial court in the admission of testimony and the gross excessiveness in the amount of the verdict. See Mississippi State Highway Commission v. Rogers, 236 Miss. 800, 112 So. 2d 250.

The case was tried again at a vacation term of the Circuit Court of the First Judicial District of Jones County commencing on August 31, 1959, and on September 2, 1959, the jury returned a verdict in favor of the appellee for the sum of $122,500, upon which judgment was entered. A motion for a new trial was made by the appellant, and on September 12, 1959, the circuit court affirmed the judgment on condition that the appellee enter a remittur reducing the principal amount of the judgment to $90,000. The appellee declined to enter such

remittur, and a new trial was granted on the grounds, first, that the opinion rendered by this Court on the first appeal was applicable, and, second, that the verdict rendered by the jury on the second trial was still excessive and unreasonable, and "so great as to indicate passion on the part of the jury, and to shock the enlightened conscience."

On November 5, 1959, the appellant filed a petition for a change of venue to the Circuit Court of the Second Judicial District of Jones County, or to the circuit court of some other convenient county in the state, alleging as grounds therefor the following: (1) That, because of prejudice existing in the public mind, the petitioner was unable to obtain a fair and impartial trial in the First Judicial District of Jones County; (2) that the cause had been tried twice in the First Judicial District of Jones County, and in each instance the several juries had brought in verdicts which the courts had held to be so excessive as to shock the enlightened conscience; (3) that the verdicts rendered by the juries in other eminent domain cases filed by the petitioner in the First Judicial District of Jones County had likewise been held by the courts to be so excessive as to shock the enlightened conscience; and (4) that the actions of all of said juries had established a pattern showing the inability of the petitioner to obtain a fair and impartial trial in the First Judicial District of Jones County. The appellant attached to its petition a certified copy of the resolution adopted by the State Highway Commission on October 13, 1959, directing its attorneys to file a petition for a change of venue for the reasons stated.

Before the case was called for trial again at the November 1959 term of the court, the appellant presented its petition for a change of venue, and offered in evidence in support of said petition the entire record of the proceedings in said cause entitled "Mississippi State Highway Commission v. C. B. Rogers," including the

court reporter's transcript of the record and all orders and court papers in said cause, and also the judgment and opinion of this Court rendered on the first appeal. The appellant also offered in evidence, over the objection of the appellee, parts of the records in the following eminent domain cases appealed to this Court from the Circuit Court of Jones County and decided by this Court since May 25, 1959, in which this Court or the trial court found that the verdicts rendered by the juries were so grossly excessive as to be wholly unreasonable and to evince bias and prejudice by the jury, and in which new trials were awarded or the judgments affirmed only after remitturs were entered; Mississippi State Highway Commission v. Ellzey (1959), 237 Miss. 345, 114 So. 2d 769; Mississippi State Highway Commission v. Taylor (1959), 237 Miss. 847, 116 So. 2d 757; Mississippi State Highway Commission v. Pittman et al. (1960), 238 Miss. 402, 117 So. 2d 197; Mississippi State Highway Commission v. Pittman (1960), 120 So. 2d 434; Mississippi State Highway Commission v. McDuffie (1960), 124 So. 2d 284; Mississippi State Highway Commission v. Stubbs (1960), 124 So. 2d 281; Strickland v. Mississippi State Highway Commission (1960), 123 So. 2d 238; Strickland v. Mississippi State Highway Commission (1960), 124 So. 2d 696; Mississippi State Highway Commission v. Taylor (1960), 124 So. 2d 684.

At the conclusion of the evidence offered on behalf of the appellant in support of its petition for a change of venue, the court stated that it did not think that the evidence that had been offered was sufficient to justify the granting of a change of venue, and an order was entered denying the petition for a change of venue. The case was then tried again at the November 1959 term of the circuit court, and the jury returned a verdict in favor of the appellee for the sum of $100,000. Judgment was entered for that amount, and from that judgment the appellant has prosecuted this appeal.

It is not necessary that we undertake to set forth in detail the testimony of each of the witnesses who testified on behalf of the respective parties during the third trial.

The testimony offered on behalf of the State Highway Commission may be summarized briefly as follows: The land owned by Rogers was situated on the west side of the present U. S. Highway No. 11 approximately one mile north of the city limits of Ellisville and approximately three miles south of the city limits of Laurel. The entire tract, prior to the taking of the strip of 6.5 acres for right of way purposes, was substantially rectangular in shape, and consisted of 28.98 acres, with a frontage of approximately 418 feet on Highway No. 11. At the time of the taking, Rogers was using 6.7 acres off of the east side of the 28.98-acre tract, fronting on Highway No. 11, as a business site and storage lot for his used auto parts business. This front tract was under fence with a gate on the east side for entrance from Highway No. 11. There were two buildings located on the land within the enclosure which were being used for business purposes, a metal building 40 x 60 made out of galvanized iron which was used as an office and parts building, and a long metal covered shed 40 x 150, a part of which was enclosed with metal sheeting. The remaining part of the 28.98-acre tract lying west of the storage lot was woodland used only for the growing of timber. The new highway, as laid out and partially constructed at the time of the third trial, crossed Rogers' land diagonally in a northeasterly and southwesterly direction.

B. S. McLemore, right of way agent for the State Highway Commission, testified, and the plat which appears in the record shows, that the strip of land taken for right of way purposes included 2.6 acres of the 6.7 acres frontage which at the time of the taking was being used by Rogers in his used auto parts business,

and 3.9 acres of woodland lying west and southwest of
the fence which marked the west boundary line of the
6.7 acres tract. The total amount of land left on the east
and south side of the new highway was 4.2 acres, with
a frontage of 309.2 feet on Highway No. 11. There was
also left after the taking 18.1 acres of woodland lying
west of the new highway for which there was no outlet
to the public road. McLemore testified that the 6.7 acres
which Rogers was using as a business site prior to the
taking was approximately the same elevation as Highway
No. 11, but there was a drop-off of 7 to 9 feet in the ele-
vation of the woodland extending westwardly from the
used auto parts storage lot. Three witnesses testified
for the State Highway Commission as to the value of
Rogers' property before and after the taking. J. Ed
Turner, Leon T. Rogers, Jr., and Clarence Boone, all
of whom appear to have had experience in appraising
real property, testified that in their opinion the value
of the Rogers property before the taking was $27,500,
and after the taking $5,400, making a difference in value
of $22,100.

Three witnesses also testified on behalf of the appellee
as to the value of the property before and after the
taking.

James Reeves, who was engaged in the contracting
business in the City of Laurel, testified that the fair
market value of the property before the taking was
$123,300, and after the taking $4,100, making a difference
of $119,200. On cross-examination Reeves stated that
he had never appraised any commerical property in the
First Court District of Jones County and that he had
never owned any timber land in the First Court Dis-
trict of Jones County. He stated that he did not know
of any property just like Rogers' property that had been
sold. Reeves stated, however, that he had purchased a
parcel of land containing 22 or 23 acres, situated about
a mile north of the Rogers property and approximately

one mile closer to the City of Laurel, six or seven years before the date of the trial; and that to the best of his knowledge he had paid $15,000 for the land; that the tract which he had purchased included some land of the same kind as the Rogers land, and the frontage was about like that of Rogers; and that he was using the land for a used auto parts business.

John Blackledge testified that he was manager of the Confederate Savings and Loan Association of Laurel and that he had made an appraisal of the Rogers property, about 18 months before the trial. In his opinion the total value of the property before the taking was $137,345, and after the taking $7,300, making a difference of $130,045. On cross-examination Blackledge stated that he never owned any property in the First Judicial District of Jones County, and that the only piece of property that he had ever sold in the First Court District of Jones County was a piece of property that belonged to his mother-in-law. He was asked what he used for comparable sales in estimating the value of the Rogers property. His answer was that he had not been able to get the price paid for other property in the vicinity which had been sold, "and the only way I could do is just draw my own conclusion as to what I thought the value was."

Dick Warren testified that he was associated with the Southern Real Estate Company in the City of Laurel and had had experience in buying and selling his own real estate, and that he had made appraisals of both commercial and residential property. He stated that he knew the C. B. Rogers property on Highway No. 11, and had inspected the property six or eight weeks before the date of the trial. He had walked over the entire piece of land at that time. He was asked whether he was familiar with the property by walking over parts of it that he had business on. He was asked if he was able to form an opinion of the fair market value of the property as

of June 1958. Objection was made to the question, and the objection was overruled. Warren then stated that he was able to form an opinion as to the fair market value of the property at that time, and in his opinion the fair market value of the property before the taking was $124,000, and after the taking $4,000, making a difference of $120,000. On cross-examination Warren admitted that he had never been on that part of the property referred to by him as "back in there", meaning a part of the land lying west of the 6.7 acres which had been used by Rogers in his used auto parts business, prior to the taking of the strip of land for highway purposes and the construction of the roadbed.

At the conclusion of the testimony of each of the witnesses Reeves and Blackledge, a motion was made by the appellant's attorneys to exclude the testimony of the witness on the ground that the witness was not familiar with the fair market value of the property and that he had no basis on which to rest his opinion. The motion as to each of the two witnesses was overruled. At the conclusion of the testimony of the witness Warren, a motion was made to exclude his testimony on the ground that it affirmatively appeared from the witness' testimony that he had not made an inspection and appraisal of the property prior to the time that the actual construction work was begun; and that he was not familiar with the property or the condition it was in at the time of the taking. That motion was likewise overruled.

The first point argued by the appellant's attorneys as ground for reversal of the judgment of the lower court is, that the court erred in refusing to grant the appellant's petition for a change of venue.

We think the court erred in refusing to grant the change of venue under the facts disclosed by the record.

Section 1443, Mississippi Code of 1942, Rec., provides that either party to any civil action in the circuit court

may petition for a change of venue, when "he has good reason to believe, and does believe, that, from the undue influence of the adverse party, prejudice existing in the public mind, or for some other sufficient cause to be stated in the petition, he cannot obtain a fair and impartial trial in the county where the action is pending." The statute then provides that, "the court, if in term time, or the judge in vacation, shall hear the parties and examine the evidence which either may adduce, and may award a change of venue to some convenient county where an impartial trial may be had * * *."

In Tucker v. Gurley, 176 Miss. 708, 170 So. 230, the Court, in discussing the provisions of the above mentioned statute, which appeared as Section 500, Mississippi Code of 1930, in its opinion said: "Section 500, Code 1930, authorizing a change of venue upon certain stated grounds and conditions, was intended to provide a method by which a fair and impartial trial could be obtained, whenever on account of the undue influence of the adverse party, prejudice in the public mind, or other sufficient cause, a fair and impartial trial cannot be obtained in the county in which the venue was originally fixed, and whenever conditions arise which, by virtue of this statute, authorize a change of venue, the court may, and in the interest of justice, should grant a change."

 █ Statutes permitting changes of venue upon grounds of inability to obtain fair and impartial trials are to guarantee the litigant's right to fair trial, █ and an application therefor is to be granted when it is supported and proved and is seasonably filed. 56 Am. Jur., 59, Venue, par. 56. █ An application for a change of venue is addressed to the discretion of the trial judge, █ and his ruling thereon will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the

circumstances of the case. The facts relied upon by the appellant in this case to support its application for a change of venue were matters of record, and we think the proof offered was sufficient to show the actual existence of the grounds alleged as the basis of the appellant's application for a change of venue, and that the refusal of the court to grant the change constituted reversible error.

It is next argued on behalf of the appellant that the court erred in overruling the appellant's motions to exclude the testimony of the witnesses James Reeves, John Blackledge and Dick Warren, and each of them.

█ █ In view of the fact that the case must be tried again, we shall make no comment at this time on the testimony of the witnesses James Reeves and John Blackledge. But we think the court erred in admitting the opinion evidence of Dick Warren concerning the fair market value of the property before the taking.

Warren testified during the third trial, which took place during the month of December 1959, that he had made an inspection of the property six or eight weeks before the trial. That meant that he had inspected the property sometime during the month of September or October 1959. The record shows that the first trial was had in the county court in June 1958, and that the Highway Commission took possession of the right of way through Rogers' land on December 1, 1958, and that the roadbed for the new highway had been partially constructed at the time of the second trial which was begun on August 31, 1959. Warren was asked whether he was familiar with the Rogers property back in June 1958. His answer was, "I was familiar with the property by walking over parts of it that I had business on." He was then asked whether he was able to form an opinion as to the fair market value of the property as of June 1958. He stated that he was able to form an opinion of the fair market value of the property at that time, and

over the objection of the appellant's attorney he was permitted to state that in his opinion the fair market value of the property at that time was $124,000. He then stated that in his opinion the reasonable and fair market value of the property that was left after the taking was $4,000.

On cross-examination Warren stated that when he visited Rogers' place of business before the highway was constructed he sometimes went to the office, and sometimes he found what he was looking for "back in the storage areas." He stated that there was a fence "back there", somewhere on that part referred to as "the storage areas," but the fence was not there when he made his last trip. Warren was asked whether, as he walked westward from the front entrance of the property, he had noticed the decrease in the elevation of the land as it extended westwardly. His answer was, "To my knowledge there wasn't any appreciable decrease." Warren was then asked whether he went to the southwest corner of the piece of property left to Rogers on the east and south side of the new highway—"the little area marked in blue" on the map, containing 0.6 of an acre, and whether he noticed any appreciable decrease in elevation in that piece of property as compared with the part located in front of the office building. He stated that he had gone on that part of the property, and there was a decline in there. Warren's attention was then directed to the 3.9 acres parcel of land shown on the plat in green, lying within the new right of way and immediately west of the storage area, and Warren was asked the following questions and gave the following answers: "Q Had you ever been on this property that is situated here in the green, A Yes, sir. Q Before the highway was constructed? A No, sir, I don't believe I have been back in there. Q Never been back in there? A No, sir, I will have to be frank with you."

In discussing expert and opinion evidence and the competency of witnesses in cases of this kind, the textwriter in 18 Am. Jur., pp. 999, 1000, Eminent Domain, par. 355, says:

"The value of a parcel of land taken by eminent domain is always a matter of opinion and may be proved by opinion evidence. Experts, such as dealers in real estate and assessors of taxes, who have not only a general knowledge of the subject of real estate values, but are familiar with prices in the neighborhood of the land in question and are acquainted with the land itself, may give their opinion as to its value. * * * Opinion evidence is also usually admitted from persons who are not strictly experts, but who from residing and doing business in the vicinity have familiarized themselves with land values and are more able to form an opinion on the subject at issue than citizens generally. This rule is liberally applied in the case of farm lands, as other evidence is often not easily obtained and neighboring farmers are able to judge value with reasonable accuracy, if acquainted with the physical surroundings and the character of the soil; * * *. It is, of course, proper to determine the qualifications of such witnesses before their testimony as to value is received. It will not be presumed that a witness is competent to give an opinion, but it must be shown that he has some peculiar means of forming an intelligent, correct judgment as to the value of the property in question or the effect upon it by a particular improvement, beyond what is possessed by men generally. It is apparent that the opinion of a witness should not be admitted where it appears that his opportunity for knowledge concerning the land was slight or that his knowledge was remote in point of time. The competency of witnesses testifying as to the value of the land taken is primarily for the court. * * *."

In discussing opinion evidence as to damage, the same textwriter, in paragraph 356, says: "In determining the

damage to land not taken, a witness must be familiar with the market value before the injury was inflicted and the market value afterward, and estimates of percentage of value lost, not based upon some substantial ground, should be excluded." 18 Am. Jur., p. 1001, Eminent Domain, par. 356. See also Annotation on Opinion Evidence—Value of Realty, which appears in 159 A.L.R., pp. 7 to 98, and cases cited.

In Levee Commissioners v. Dillard, et al., 76 Miss. 641, 25 So. 292, the Court held that the opinion of any competent witness is admissible in an eminent domain trial, in order to assist but not control the judgment of the jury, in determining the value of land which is to be taken; but "such opinions should be admitted only when given by persons acquainted with the particular land and who have knowledge of the value thereof." The Court then stated that the testimony of the witness Stovall, who had resided many years in the county in which the land was situated, was properly excluded for the reason that he was not acquainted with the plantation of Dillard, Coffin and Mays.

Warren's testimony shows that he was not familiar with any part of the Rogers property before or at the time of the taking in June or December 1958, except the 6.7 acres tract fronting on Highway No. 11, which was enclosed by a fence and was being used by Rogers in his automobile parts business. His inspection of the remaining part of the Rogers property, which included 3.9 acres of the 6.5 acres actually taken for highway purposes, several months after the taking, and after the topography and other physical features of the 3.9 acres had been changed by the construction of the roadbed for the new 4-lane highway, did not qualify him to express an opinion as to the value of the property in the condition that it was in before or at the time of the taking; and the court in our opinion should have sustained the appellant's objection to Warren's opinion evidence

as to the value of the property before the taking when the testimony was offered, and in any event should have sustained the motion to strike after it was shown on cross-examination that Warren was not qualified to testify concerning the value at the time of the taking.

Finally, it is argued that the appellee's proof of damages is without probative value, and there is no credible evidence to support the jury's verdict. But, in view of the fact that the judgment of the lower court must be reversed and a new trial granted for the errors mentioned above, it is not necessary that we consider this last assignment of error.

For the reasons stated, the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

*McGehee, C.J.,* and *Lee, Gillespie* and *Rodgers, JJ.,* concur.