IRVING, P.J.,
for the Court:
¶ 1. On July 29, 2009, Tarpon Whitetail Gas Storage, LLC (Tarpon) filed a complaint to acquire by eminent domain an easement to store natural gas in a depleted gas reservoir 3,400 feet below ground. The appellants, whom we will refer to collectively as the “Blanchards” for purposes of this opinion, each own a fractional interest in a twenty-five-acre tract of land above the reservoir. Following a trial in the Monroe County Special Court of Eminent Domain, a jury awarded the Blanch-ards $13,000 as just compensation for the partial taking of the easement.
¶ 2. Feeling aggrieved, the Blanchards appeal and raise several issues, which we have consolidated for clarity: (1) whether the trial court failed to abide by the procedural safeguards associated with a “quick take” proceeding, (2) whether the trial court erred in admitting Tarpon’s statement of values and testimony from its real-estate appraiser, (3) whether the trial court erred in refusing to permit the Blanchards’ statement of values or their testimony regarding property value, (4) whether the trial court erred in allowing Tarpon to amend its pleadings, (5) whether the trial court erred in denying the Blanchards’ motion for a continuance, (6) whether the trial court erred in denying the Blanchards’ motion for a jury view of the property, and (7) whether the trial court erred in “overturning the jury verdict.”
¶ 3. Finding no error, we affirm.
FACTS
¶ 4. Tarpon seeks to develop a natural-gas-storage facility at the Aberdeen Gas Storage Field located in Monroe County, Mississippi. The storage field encompasses 4,840 acres of land and contains a depleted gas reservoir 3,400 feet below the surface. Tarpon plans to use the depleted reservoir as a natural-gas-storage facility. The facility will consist of injection/withdrawal wells, salt-water-disposal wells, and pipelines interconnecting with an interstate pipeline. However, none of the facility’s pipelines or wells will be located on the Blanchards’ property.
¶ 5. Each of the Blanchards owns a fractional interest in a twenty-five-acre tract of *695 land located -within the storage field. Tarpon attempted to lease the right to store gas in the portion of the depleted gas reservoir under the Blanchards’ property. However, Tarpon was unable to reach an agreement with the Blanchards and, as a result, filed an eminent-domain action. Soon after, Tarpon filed a motion seeking to confirm its right to condemn the portion of the reservoir located under the Blanch-ards’ property. Additionally, Tarpon sought an injunction allowing it immediate access to the subsurface of the Blanchards’ property for gas storage.
¶ 6. Following a hearing on the motion, the trial court found that Tarpon’s proposed gas-storage facility was for a public use and served a public purpose. In support of its finding, the trial court noted that the Federal Energy Regulatory Commission had issued Tarpon a Certificate of Public Convenience and Necessity (FERC Certificate), which authorizes Tarpon to exercise the power of eminent domain.[1] Additionally, the Mississippi State Oil and Gas Board had authorized the project and concluded that public convenience and necessity required its approval.[2] Consequently, the trial court confirmed Tarpon’s right to condemn an easement for gas storage under the Blanchards’ property and granted its request for an injunction allowing Tarpon immediate access to the depleted gas reservoir.
¶7. Tarpon served discovery on the Blanchards, seeking the identity of fact and expert witnesses, appraisals, and other evidence relevant to determining just compensation for Tarpon’s partial taking of an easement. Tarpon later served supplemental discovery, asking the Blanchards to provide their fractional ownership interests in the twenty-five-acre tract and identify whether their interest was acquired by purchase or inheritance. When the Blanchards failed to respond to Tarpon’s discovery requests, it filed a motion to compel, which the trial court granted. The court ordered the Blanchards to respond to Tarpon’s interrogatories and requests for production of documents; however, the Blanchards failed to comply with the court’s order.
¶ 8. On December 21, 2009, the Blanch-ards’ attorney filed a motion for a continuance, seeking to reschedule the trial set for January 5, 2010.[3] In the motion, the Blanchards’ attorney claimed to be suffering from “serious health problems,” and *696 asked for a 120-day extension to complete discovery and prepare for trial. The trial court granted the motion and rescheduled the trial for August 30, 2010.
¶ 9. On March 23, 2010, the trial court entered a scheduling order setting May 5, 2010, as the Blanchards’ deadline for designating experts and July 30, 2010, as the discovery deadline. Additionally, the trial court ordered the Blanchards to submit a statement of values no later than ten days before trial, or August 20⅝ 2010.
¶ 10. The Blanchards failed to provide Tarpon with responses to the outstanding discovery requests or comply with the deadlines in the scheduling order. On August 25, 2010, Tarpon filed a motion to preclude the Blanchards from offering any evidence at trial based on their failure to respond to discovery requests or comply with the court’s orders. Additionally, Tarpon sought an entry of default against the Blanchards.
¶ 11. The next day, the Blanchards’ attorney filed a second motion for a continuance based on his continuing health problems.[4] The trial court denied the continuance and entered an order precluding the Blanchards from offering evidence at trial based on their failure to file a statement of values, designate experts, or comply with the court’s orders compelling discovery responses.
¶ 12. A jury trial to determine just compensation for Tarpon’s taking of an easement for gas storage under the Blanchards’ property was held on August 30-31, 2010. Tarpon’s real-estate appraiser, Stephen Holcombe,- valued the easement at $6,500. In accordance with the court’s previous order, the Blanchards were not permitted to present evidence regarding valuation. Ultimately, the jury awarded the Blanchards damages totaling $13,000.
¶ 13. Additional facts, as necessary, will be related in our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Quiclfr-Take Statute

¶ 14. The Blanchards contend that the trial court failed to comply with the procedural safeguards set forth in Mississippi’s quick-take statute. However, as Tarpon points out in its brief, it did not proceed under the quick-take statute, nor is it an entity eligible to do so. Only particular government entities are eligible to proceed under the quick-take statute. See Miss.Code Ann. § 11-27-81 (Supp. 2011). Private entities, like Tarpon, are not eligible to proceed under the quick-take statute.
¶ 15. While Tarpon did not proceed under the quick-take statute, it nonetheless obtained immediate access to the Blanch-ards’ subsurface by invoking the trial court’s equitable powers and obtaining an injunction. However, the Blanchards have not challenged the court’s decision to grant Tarpon injunctive relief, nor have they shown how they were damaged by Tarpon’s immediate access to the subsurface of their property. This issue is without merit.

2. Talon’s Statement of Values and Expert Testimony

¶ 16. The Blanchards argue that the trial court erred in allowing Tarpon’s statement of values and the testimony of its real-estate appraiser, Holcombe. The *697 Blanchards contend that Holcombe erroneously relied on Ohio case law in determining fair market value. Furthermore, they take issue with Holcombe’s departure from the “before-and-after” rule in determining just compensation.
¶ 17. The “application of the proper legal standard for valuing property [is] a question of law,” which an appellate court reviews de novo. Miss. Transp. Comm’n v. Fires, 693 So.2d 917, 920 (Miss.1997). The Mississippi Supreme Court has recognized three standards for determining the fair market value of real property: “(1) the cost approach, (2) the income-capitalization approach, and (3) the market-data or comparative-sales approach.” Gulf S. Pipeline Co. v. Pitre, 35 So.3d 494, 498 (¶ 6) (Miss.2010) (citations omitted). However, as Tarpon points out, our supreme court has yet to address acceptable methods for determining the fair market value of underground gas-storage rights. For this reason, Holcombe considered the valuation methodologies announced in an Ohio Supreme Court case involving condemnation of gas-storage rights, Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage Easement, 67 Ohio St.3d 463, 620 N.E.2d 48 (Ohio 1993).
¶ 18. The first method involves consideration of comparable sales of easements for the purpose of storing natural gas. Id. at 49. Holcombe testified that this method is similar to the market-data or comparative-sales approach recognized under Mississippi law. However, Holcombe explained that there was no evidence of sales of gas-storage easements in the area, and, therefore, the comparative-sales method was inapplicable.
¶ 19. The second method involves the valuation of natural gas remaining in the reservoir where the easement is sought, provided “sufficient natural gas remains under the landowner[’s] tract so as to allow the commercial recovery and sale of that natural gas.” Id. Tarpon’s petroleum engineer, Michael Dean, testified that there was “no commercially recoverable” natural gas in the reservoir below the Blanchards’ property. Accordingly, this valuation method was also inapplicable.
¶ 20. Under the third method, fair market value is determined based on “a capitalization of the rental income for the right to store gas.” Id. Holcombe used this method in preparing Tarpon’s statement of values and in determining just compensation owed to the Blanchards. Holcombe obtained lease agreements for gas-storage rights from the Aberdeen Gas Storage Field as well as other Mississippi gas-storage fields to estimate a stream of rental payments, which he discounted to arrive at the fair market value of the subsurface, being condemned. While the Blanchards take exception to Tarpon’s reliance on Ohio law in determining fair market value, the valuation method selected mirrors the income-capitalization approach previously recognized by our supreme court as an appropriate method for valuing real property. As such, this issue is without merit.
¶ 21. The Blanchards also contend that Holcombe erred in .departing from the before-and-after rule in determining just Compensation. In a partial taking, just compensation has two components: “the value of the property taken and the damage, if any, to the remainder.” Miss. State Highway Comm’n v. Franklin County Timber Co., 488 So.2d 782, 785 (Miss.1986). Damages for diminution in the value of the remainder are determined using the familiar before-and-after rule. See Fires, 693 So.2d at 920-21. Under the before-and-after rule, “[w]hen a portion of a larger tract of land is taken for public use, the owner is entitled to be awarded the difference between the fair market value *698 of the entire tract immediately before the taking and the fair market value of the remaining tract immediately after the taking.” Fires, 693 So.2d at 920 (citations omitted). However, our supreme court has recognized that “there are exceptions to the before[-]and[-]after rule, which may apply in specific situations.” Id. at 921 (internal quotations omitted).
¶ 22. Holcombe’s calculation of just compensation included the fair market value of the gas-storage rights taken, which he calculated using the income-capitalization approach, plus an award of nominal damages to compensate the Blanchards, as owners of mineral rights, for any remaining natural gas in the reservoir.[5] Holcom-be testified that the surface of the Blanch-ards’ tract would not be damaged as a result of Tarpon’s partial taking of the subsurface; therefore, he assigned a value of zero for damages to the remainder of the tract.
¶ 23. Our supreme court has previously held that it is not error for an appraiser to value only the land taken, and not the entire parcel, where he believes there is no injury to the remainder. See Green Acres Mem’l Park, Inc. v. Miss. State Highway Comm’n, 246 Miss. 855, 864, 153 So.2d 286, 290 (1963). In Green Acres, the Mississippi State Highway Commission sought to condemn a one-acre strip of land located at the back of a cemetery to build a highway. Id. at 859, 153 So.2d at 287. The Commission’s appraiser valued the land taken, but he testified that “he did not attribute any damages to the remainder of the [c]eme-tery.” Id. at 860, 153 So.2d at 288. The cemetery owners argued on appeal that the trial court erred in allowing the Commission’s appraiser to give his opinion of “the value of the land taken without requiring [him] to show the total value of the entire [cjemetery” before and after the taking. Id. at 861, 153 So.2d at 288.
¶ 24. The supreme court upheld the jury verdict, which was based on the Commission’s appraisal of only the part taken. Id. at 864, 153 So.2d at 290. The court concluded that there was no departure from the before-and-after rule, noting that the jury was properly instructed on the rule as a measure of damages. Id. Furthermore, because the appraiser opined that the partial taking would not damage the remainder of the cemetery, the before- and-after rule would have had no impact on his calculation of just compensation. See id. at 863, 153 So.2d at 289. Finally, the court stated that the before-and-after rule “does not mean that each witness must give a before[-]and[-]after valuation of the property....” Id. at 863, 153 So.2d at 289 (internal quotations omitted) (quoting Miss. State Highway Comm’n v. Strong, 240 Miss. 756, 765, 129 So.2d 349, 352 (1961)).
¶ 25. In this case, Holcombe testified that Tarpon’s taking of the subsurface would not damage the surface of the Blanchards’ tract. Therefore, application of the before-and-after rule would have had no impact on his calculation of just compensation. Admittedly, the trial court denied the Blanchards’ jury instruction on the before-and-after rule. However, because damages would have been the same either way, we fail to see how the Blanch-ards were damaged by Holcombe’s meas *699 ure of just compensation.[6] This issue is without merit.

3. Blanchards’ Statement of Values & Lay Testimony

¶ 26. The Blanchards contend that the trial court erred in refusing to admit their statement of values or allow them to testify regarding the value of their property. The Blanchards filed their statement of values on August 27, 2010-three days before trial. The Blanchards valued the subsurface rights being condemned at $500,000. The trial court excluded the statement because it was untimely under Mississippi Code Annotated section 11-27-7 (Rev.2004), which requires defendants to an eminent-domain proceeding to file a statement of values no less than ten days prior to trial. The Blanchards had notice and ample time to comply with the statutory deadlines, and they have provided no reason for their failure to comply other than their attorney’s health issues. As addressed more fully in our discussion of the Blanchards’ motion for a continuance, the trial court attempted to accommodate the Blanchards, given their attorney’s failing health, by rescheduling the trial. This necessarily gave the Blanchards additional time to prepare and file a statement of values since the ten-day deadline is tied to the trial date. However, despite the court’s accommodation, the Blanchards failed to file a statement of values by the statutory deadline. Therefore, the trial court did not err in excluding the Blanch-ards’ statement of values. This issue is without merit.
¶ 27. The Blanchards also argue that as the owners of the twenty-five-acre tract, they should have been able to offer lay testimony regarding the land’s value. “It is settled in eminent[-] domain practice that a landowner may give his opinion of the fair market value of his property.” Clark v. Miss. Transp. Comm’n, 767 So.2d 173, 178 (¶ 20) (Miss.2000) (quoting Potters II v. State Highway Comm’n of Miss., 608 So.2d 1227, 1235 (Miss.1992)). However, the landowner must be familiar with the land and “cognizant of land values of comparable property as to quality, use[,] and location.” Pearl River Valley Water Supply Dist. v. Wood, 252 Miss. 580, 598, 172 So.2d 196, 204 (1965) (citing Miss. State Highway Comm’n v. Rogers, 240 Miss. 529, 542, 128 So.2d 353, 359 (1961)). Therefore, the Blanchards would have had to show knowledge of the value of gas-storage rights in a depleted reservoir. Even if the Blanchards had such knowledge, they failed to disclose the nature of their testimony during discovery; therefore, the trial court did not err in refusing to allow their testimony. This issue is without merit.

I. Amendment of the Pleadings

¶28. The Blanchards argue that the trial court erred in allowing Tarpon to proceed -with condemnation rights at trial that differed from the rights contained in the pleadings. Tarpon’s complaint described the rights it sought to condemn as follows:
[T]he right to inject, store, maintain, and withdraw natural gas from the Storage Interval in the Field, as approved by the [Mississippi State Oil and Gas] Board and the FERC, with the incidental right of surface and sub-surface ingress, use, and egress as reasonably necessary to construct, operate, and maintain the [pjroject.
(Emphasis added).
¶ 29. At trial, Alan Cook, Tarpon’s corporate representative, testified that Tar *700 pon would not use the surface of the Blanchards’ property in connection with the gas-storage facility. In response, the Blanchards’ attorney requested that the pleadings be amended to remove the “incidental rights of surface ingress, use, and egress” from the description of the rights to be condemned. Tarpon agreed to stipulate that it would not use the surface of the Blanchards’ property, and Tarpon’s attorney moved to amend the pleadings. The trial court allowed the amendment.
¶ 30. An appellate court reviews a trial court’s decision to grant or deny a motion for leave to amend the pleadings for abuse of discretion. Jones v. Fluor Daniel Servs. Corp., 32 So.3d 417, 424 (¶ 29) (Miss.2010). An amendment should not be granted where it would prejudice the other party. Id. We fail to see how the Blanchards were prejudiced by the trial court’s decision to allow Tarpon to amend its pleadings and condemn a lesser interest in the Blanchards’ property. Furthermore, it was their attorney who initially asked that the pleadings be amended to conform with Cook’s testimony. This issue is without merit.

5. Motion for a Continuance

¶ 31. The Blanchards argue that the trial court erred in denying their motion for a continuance. “The granting of a continuance is largely a matter within the sound discretion of the trial court[,] and unless manifest injustice appears to have resulted from a denial, [an appellate court] should not reverse.” Peden v. City of Gautier, 870 So.2d 1185, 1188 (¶ 10) (Miss.2004) (quoting Morgan v. Greenwaldt, 786 So.2d 1037, 1045 (¶ 26) (Miss.2001)). Furthermore, a “trial court may exercise ‘reasonable latitude’ in the setting and continuance of cases.” Id. (quoting Morgan, 786 So.2d at 1045 (¶ 26)).
¶ 32. On December 21, 2009, the Blanchards’ attorney filed a motion to continue the trial set for January 5, 2010. In his motion, he advised the court of his serious health problems, and he requested a 120-day extension to complete discovery and prepare for trial. The trial court granted the motion and rescheduled the trial for August 30, 2010. Later, the trial court entered a scheduling order setting May 5, 2010, as the Blanchards’ deadline for designating experts and July 30, 2010, as the discovery deadline. As Tarpon points out in its brief, these deadlines far exceeded the 120 days previously requested by the Blanchards’ attorney.
¶ 33. Despite obtaining a continuance, the Blanchards failed to provide Tarpon with responses to the outstanding discovery requests or comply with the deadlines in the scheduling order. In fact, the Blanchards’ only response following the first continuance was to file a second motion for a continuance on August 26, 2010-four days before the rescheduled trial date.
¶ 34. Based on these facts, the trial court did not abuse its discretion in denying the Blanchards’ second motion for a continuance. The trial court had previously accommodated the Blanchards’ attorney based on his medical condition; however, despite the court’s accommodation, the Blanchards failed to respond to discovery or comply with the court’s scheduling order. This issue is without merit.

6. Jury View

¶ 35. The Blanchards contend that the trial court erred in denying their request for an inspection of the premises. Mississippi Code Annotated section 11-27-19 (Rev.2004) permits jury views of property in an eminent-domain proceeding. However, whether to allow a jury view is a *701 matter left to “the sound discretion of the judge.” Id.
¶ 36. The trial court refused the Blanchards’ request for a jury view given its previous ruling that, based on their failure to respond to discovery requests and comply with the court’s orders, the Blanchards would not be permitted to present evidence at trial. The Blanchards point out that our supreme court has previously stated that “it is a better practice to allow the jury to view the premises....” Redevelopment Auth. of Meridian v. Holsomback, 291 So.2d 712, 715 (Miss.1974). While allowing the jury to view the premises in an eminent-domain proceeding constitutes “best practice,” this is only true where “such view may be of assistance to the jury in resolving the conflicts in the evidence relative to the value.” Id.
¶ 37. We fail to see how viewing the premises would have aided the jury in this case. Tarpon sought to condemn an easement in a depleted gas reservoir located 3,400 feet below the Blanchards’ property. Furthermore, Tarpon stipulated that it would not take or use the surface of the Blanchards’ property. Therefore, the circuit court did not err in refusing a jury view of the property. This issue is without merit.

7. Jury Verdict

¶ 38. In their final assignment of error, the Blanchards allege that the “trial judge erred in overturning the jury verdict.” However, based on our review of the record, the trial court did not overturn the jury’s verdict awarding the Blanchards $13,000 in damages. This issue is without merit.
¶ 39. THE JUDGMENT OF THE MONROE COUNTY SPECIAL COURT OF EMINENT DOMAIN IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

.The Natural Gas Act provides:
When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: Provided, [t]hat the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.
15 U.S.C. § 717f(h) (2006).

. A natural-gas company, like Tarpon, must obtain the Mississippi State Oil and Gas Board’s approval prior to exercising its right to eminent domain. See Miss.Code Ann. § 53-3-159 (Rev.2003).

. The order setting the trial was filed on November 3, 2009.

. The Blanchards’ attorney had been diagnosed with colon cancer, which had spread to his liver and lungs.

. In Columbia, the Ohio Supreme Court determined that “you must award nominal damages to the holder of [mineral] Iease[s] even if the presence of native oil and gas in paying quantities is not proven to a reasonable probability.” Columbia, 620 N.E.2d at 50. Because the Blanchards owned mineral rights, Holcombe assigned a value of $10 per acre, for a total of $250, in damages even though the undisputed evidence was that the reservoir was depleted and that there was no commercially recoverable gas remaining.

. Furthermore, the jury disregarded Holcom-be’s calculation of just compensation of $6,500 and awarded the Blanchards $13,000 in damages.