Mississippi State Highway Commission *v.* Rogers.

No. 41237　　　　　May 25, 1959　　　　112 So. 2d 250

*Joe T. Patterson,* Atty. Gen., *Matthew Harper, Jr.,* Asst. Atty. Gen., Jackson; *Welch, Gibbes & Graves, Boyd & Holifield,* Laurel, for appellant.

*James D. Hester, George Maxey,* Laurel, for appellee.

APPELLANT IN REPLY.

ETHRIDGE, J.

The Mississippi State Highway Commission filed a petition in the County Court for the First Judicial District of Jones County against appellee, C. B. Rogers, seeking to condemn a parcel of land owned by Rogers and comprising a total of 6.52 acres, for public purposes in the construction of new U. S. Highway 11, Interstate. The issue of damages for the taking was tried before a jury in the county court, which rendered a judgment for Rogers in the amount of $120,000. The Commission appealed to the circuit court, which found a number of errors in the trial before the county court, and ordered, in the alternative, a reversal or a remittitur of $18,000. Appellee accepted the remittitur, so the judgment on appeal here is in the amount of $102,000.

Rogers' entire tract of land is substantially rectangular in shape, and consists of 28.98 acres. It is about 1.5 miles south of the city limits of Laurel, and about 3

miles north of the city limits of Ellisville. It faces east on old Highway 11, on the west side, with a frontage of approximately 405 feet. Rogers is now using 6.7 acres fronting on old Highway 11 for a used and junk auto parts business. This front tract is under fence with a gate on old Highway 11 for entry. It has two buildings on it, with wood frame, metal galvanized roof and siding, and concrete slab floors. The front, smaller building is used for an office and has shelves upon which auto parts are placed. It will not be taken. The rear building is used for a garage and paint shop. There are gravel drives and a gravel area to the front.

The new Highway 11 will cross appellee's land toward the front of his tract in a northeasterly-southwesterly direction, taking also a strip fronting 108.84 feet on old Highway 11 for an interchange access. Since the new highway is a limited access facility, and its elevation is about 13 feet above this land, the remaining land east of it after taking will not have direct access to the new highway, but only to the old one. Of the 6.7 acres now used by Rogers, the Commission will take 2.88 acres; it will also take 3.82 acres which he is not now using, west of the fence marking the west boundary of his present business area. The total area taken by the highway is 6.52 acres. Rogers will have left a 296.16 foot frontage on old highway 11, and 3.82 acres fronting on that highway and east of the new highway. West of the new highway he will have left 18.64 acres, part of which has some timber on it. The great weight of the evidence reflects most of it is ten to twelve feet lower than the fenced, east 6.7 acres, and is swamp, bottom land. After the taking, the 18.64 acres west of the new highway will be virtually inaccessible and of little value. The three appraisers who testified for the Commission fixed a present fair market value of $27,500 on the entire tract before taking, after taking, $5,400, or damages of $22,100. The five witnesses

who testified as to values for appellee fixed the value before taking at $129,000 to $163,420; the value after taking from $4,100 to $7,300; and damages for the taking, from $124,000 to $157,465. Two of the witnesses for appellee fixed the value for the front 12 acres at $7,000 an acre, one at $10,000 an acre, another, the front 8 acres at $8,000 per acre, and another the front 3 acres at $12,000 an acre, and the front 12 acres aggregating $10,000 an acre. Several of these witnesses for appellee guessed and approximated the acreage used presently in condemnee's business, the amount of land under fence, and the amount left east of the new highway after taking. Several of appellee's witnesses missed the frontage remaining after the taking by approximately 100 feet. Others placed separate values upon particular items, including some improvements not taken and some separate parts of the entire parcel, including separate valuation of timber. They then added these particular separate items, and aggregated the value of the lands. The separate items were not used simply as facts bearing on the market value of the remaining land. This method of adducing evidence in eminent domain proceedings was misleading to the jury and was condemned in Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565 (1940). *Hillman* also held it was error to value the trees on the land as a separate item of damages.

Another witness for appellee admitted that his estimate of valuation was based solely on what he would want for the property if it was his. A map of the land, showing its measurements and the various acreages in the different tracts, was undisputed, as was the testimony of appellants' witnesses thereon. Yet several of appellee's witnesses approximated and guessed as to the acreage presently used by appellee, that left, and the frontage remaining. It is unreasonable to expect a jury to determine a fair valuation with accuracy and without

prejudice in the face of such guesses and speculations. Appellee's witness Bethea apparently believed he made an erroneous calculation as to the acreage used in appellee's business, because he asked leave to go and measure the land, and return and testify as to his corrected figures. He never returned, and his original valuation was submitted to the jury.

 Appellant's evidence as to comparable sales of comparable property supported appellant's valuations. The comparable sales testimony for appellee was based essentially on hearsay and the witnesses' opinions. None of them supported in any respect the verdict. It did not meet the requirements that prices of comparable sales must relate to land similar to and of like quality to that involved in the case, and not remote in point of time. Mississippi State Highway Commission v. Daniels, 108 So. 2d 854 (Miss. 1959).

 Over four objections by appellant's counsel, appellee was permitted to cross-examine appellant's witness Boone concerning the yield and production of income from Rogers' property as an element of valuation. This was manifestly erroneous. Board of Levee Commissioners, v. Hendricks, 77 Miss. 483, 27 So. 613. Jahr, Eminent Domain (1953), Section 150, summarizes the rule:

"But testimony of profits derived from a business conducted on the condemned property is rejected as inadmissible. The reason for excluding such testimony is that the profits from a business are extremely uncertain, highly speculative, and depend on many contingencies aside from the use to which the land taken is being put. These profits depend a great deal on capital invested, general business conditions, the skill and ability of the proprietor, the manner in which he conducts his business, and many other elements. One man will often succeed where another will fail. Furthermore, neither the business nor its profits are acquired in eminent domain."

The trial court was also in error in permitting over objection the interrogation of appellee's witness John Blackledge as to the adaptability for commercial purposes of all of the land west of the tract in use. Some of this was timber land, some swamp or bottom land, some an old field. Almost all of it was considerably lower than the east tract. The evidence showed that there was no immediate need or probability that it would be used in condemnee's business. The evidence as to adaptability did not furnish a substantial basis for the jury to consider. State Highway Commission v. Brown, 176 Miss. 23, 168 So. 277 (1936).

The circuit judge rendered an excellent opinion pointing out these various errors, but, instead of reversing the judgment, he held that they resulted in an excessive verdict, and were prejudicial to appellant, but ordered in the alternative a remittitur. However, the record contains so many errors of this nature, which are clearly in violation of the law as fixed in the many cases on eminent domain, that the reason for the grossly excessive verdict is manifest. We particularly note the evidence offered by appellee on cross-examination as to yield or income from the property, and the consideration of particular elements as separate items without reference to the overall market value before and after taking under the *Hillman* rule. These errors, and the admission of most of this evidence over appellant's objections, are so substantial and prejudicial as to require a reversal of the judgments. Moreover, we think the verdict of the jury is so excessive and unreasonable, in the light of the entire record and the undisputed nature and characteristics of this land, as to show bias and prejudice on the part of the jury, and to shock the enlightened conscience. Certainly the circuit judge was correct in alternatively ordering a reversal or remittitur, but he was in error in failing to reverse the judgment *in toto* for erroneous admissions of evidence as stated,

and for gross excessiveness in the verdict which shows bias and prejudice on the part of the jury.

■■■ Rogers has filed a cross assignment of errors, asserting the circuit court erred in overruling his motion to dismiss the appeal, since the appellant had already taken physical possession of appellee's property without first paying the damages. Hence he says that Commission waived its right to appeal the cause. This contention has been decided adversely to him in State Highway Commission v. Buchanan, 175 Miss. 157, 165 So. 795 (1936), and State Highway Commission v. Daniels, 108 So. 2d 854 (Miss. 1959). By the same token, the injunction issued against Rogers on October 6, 1958, by a Justice of this Court, and concurred in by four other Justices, directing Rogers to remove his personal property from the right-of-way within thirty days and to permit the Commission to proceed to construct the highway, after the judgment of the county court, did not operate as a release of errors under Mississippi Code of 1942, Section 1347. See Mississippi Code, Section 2766 (a) and (b); Section 8023.

For these reasons, the judgments of the circuit court and the county court are reversed, and the cause remanded on direct appeal. On cross-appeal, it is affirmed.

On direct appeal, reversed and remanded; on cross-appeal, affirmed.

*Roberds, P. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.