MISSISSIPPI STATE HIGHWAY COMMISSION *v.* ELLZEY.

No. 41321          October 12, 1959          114 So. 2d 769

346

*Welch, Gibbes & Graves, Boyd & Holifield,* Laurel, for appellant.

*Deavours & Hilbun, George D. Maxey,* Laurel, for appellees.

McGEHEE, C. J.

In this case the appellant, Mississippi State Highway Commission, through the attorney general of the State, filed a condemnation proceeding against the appellee, R. B. Ellzey, as owner of certain land needed for right of way purposes and against his mortgagee and trustee. The Commission was seeking to relocate U. S. Highway No. 11 near the village of Moselle in Jones County and to condemn a 300 foot wide right of way through a tract of land belonging to the said Ellzey consisting of from 230 to 300 acres of land, the right of way to take from said tract of land 22.43 acres, diagonally across the southeast part of the entire tract of land. The relocation of the said Highway 11 would result in the construction of a four-lane link of the interstate highway system, and would leave approximately 50 acres south and east of the new right of way, and the remainder of the entire tract on the north and west thereof. The new highway would be a controlled access highway and the testimony of the witnesses disclosed that the said landowner would have no access from the part of his cattle farm left on the south and east side of the new right of way to that left on the north and west side thereof and vice versa.

The sole question presented for decision is whether or not the damages allowed the landowner in the sum of $39,500 is excessive to the extent of shocking the enlightened conscience of the Court. No point is made as to the granting or refusal of any instructions nor as to the admission or exclusion of any evidence offered.

Two witnesses for the appellant testified as to the value of this cattle farm before and after the taking

of the strip of land in question. They each placed the damages at a sum less than $14,500 whereas two witnesses for the appellees testified that in their opinion the land was worth approximately $62,000 less after the strip for the right of way was taken than the entire tract was worth before the taking. The two witnesses for the appellant placed the fair market value before the taking, one at $33,500 and the other at $32,000 and the fair market value after the taking, one at $19,000 and the other at $17,500 whereas one witness for the appellees placed the fair market value before the taking at $95,380 and the other at $92,180, and one the fair market value after the taking at $33,295 and the other at $28,559.

■■■ The point is made on this appeal for the first time that the witnesses for the appellees did not establish their qualifications to give a competent opinion as to the amount of the damages—the difference between the before and after value of the land. However, their testimony was allowed to go to the jury without objection from the appellant, and whether their testimony was competent or not the jury was entitled to consider it for whatever probative value it may have been entitled to, in arriving at a verdict. See Citizens Bank of Hattiesburg, Mississippi v. Miller, 194 Miss. 557, 11 So. 2d 457. ■■■ Nevertheless, it is presented to us for decision the question of whether or not this testimony was of sufficient probative value as to justify the verdict in the amount rendered.

In the case of Mississippi State Highway Commission v. Turnipseed, et al., 236 Miss. 764, 111 So. 2d 925, this Court recognized that "generally" in eminent domain proceedings a view of premises by the jury would be of considerable weight in determining whether a verdict is contrary to the overwhelming weight of the evidence. But in that case the verdict was for the sum of $5,320 and the testimony for the appellant had placed the damages according to the testimony of one witness

at $3,000 and the other at $3,250 and the highest amount of damages fixed by the witnesses for the appellee was $6,125, and consequently the Court was not able to say that the verdict was grossly excessive. But see Mississippi Highway Commission v. Rogers, 236 Miss. 800, 112 So. 2d 250.

In 18 Am. Jur. p. 1004, Par. 361, the rule is stated as follows: "It is sometimes said that the view is merely for the purpose of enabling the jury better to understand and apply the evidence, but it is generally considered that the jury may take into consideration what they saw on the view in connection with their own knowledge and experience, and fix the damages by both evidence and view. They may not, however, ignore the evidence and base their verdict upon their view or their knowledge of the value of the land in the case, and it is error so to instruct them. * * *."

But in the instant case there is no conflict whatever in the testimony as to the nature and character of the tract of land from which the 300-foot right of way between parallel lines was taken. It was a pasture and a wooded area with no part of the tract in cultivation. No comparable land was shown to have ever sold in that area for more than $100 per acre. According to a survey made by the county surveyor there was slightly in excess of 49½ acres of open pasture land left on the south and east side of the new right of way and approximately 175 acres left on the north and west side thereof. The land left on the north and west side of the new right of way consisted of a wooded area of approximately 88½ acres and a pasture consisted of approximately 82½ acres and an excess of 5½ acres of lowland.

There was no barn, storage place of other structural improvements anywhere on the land except a tenant house suitable for a dwelling and another old house of about ten by twelve feet in dimensions and these structural improvements were undisturbed by the location of

the new right of way. It should be noted however that there was a running spring of fresh water on the right of way taken, and which would be destroyed unless the source of the water supply could be tapped elsewhere in that locality but the northern boundary of this land left on the north and west side of the new right of way was a creek and the western boundary thereof was Leaf River.

It should also be noted that the land owner will retain any rights that he may have in the minerals underneath the entire tract of land; and that one of his witnesses in explaining his estimate of the value of the property before the taking and the value after the taking stated that such value would depend on what use the owner intended to put the land, that if he intended to use it as a truck farm it would have one value and if as a cattle farm another value. In other words, he was basing his estimate on the potential of the land dependent upon what use the prospective purchaser may want to make of the same. The test should have been the fair market value of the land before and after the taking, and would not necessarily depend upon what use a purchaser would want to make of the property, if he had the necessary capital.

At any rate since the new right of way merely extends across pasture land, the type and character of which is not in dispute, we have concluded that the verdict is so grossly excessive as to shock the enlightened conscience of the Court and should not be affirmed.

Reversed and remanded.

*Lee, Kyle, Holmes,* and *Arrington, JJ.,* concur.