Mississippi State Highway Commission *v.* Roche, et ux.

No. 43060          May 18, 1964          163 So. 2d 874

*Tate Thigpen, G. B. Keaton,* Picayune, for appellant.

*Williams & Williams,* Poplarville, for appellees.

KYLE, P. J.

This case is before us on appeal by the Mississippi State Highway Commission from a judgment of the Circuit Court of Pearl River County rendered in favor of W. R. Roche, Sr., and his wife, for the sum of $50,000, as compensation and damages for the taking of a strip of land, containing 26.06 acres, to be used for highway right-of-way purposes in the construction of a new interstate highway running through and across the appellees' 191.36-acre tract of land situated about 2½ miles east of Carriere and about five miles north of the Town of Picayune, in Pearl River County.

The record shows that the Mississippi State Highway Commission, on July 9, 1962, filed with the Clerk of the Circuit Court of Pearl River County its application for the organization of a special court of eminent do-

main for the condemnation of the above mentioned strip of land owned by the appellees for highway right of way purposes. The new highway for which a right of way was being acquired was Interstate Highway No. 59, a limited access four-lane highway running from Meridian in a southwesterly direction through the cities of Laurel and Hattiesburg, and thence southwestwardly along the route laid out by the State Highway Commission to the City of New Orleans.

The record shows that the appellees' 191.36 acres of land constituted a fractional part of Section 20, Township 5 south, Range 16 West, in Pearl River County. According to the application for condemnation of the above mentioned strip of land for right of way purposes, the new highway was to enter the appellees' land at the northeast corner of the W½ of the NE¼ of said Section 20, and run thence in a southwesterly direction through and across the W½ of the NE¼ of said section approximately 3,000 feet to points of intersection with the north and east boundary lines of the NE¼ of the SW¼ of said Section 20.

The 191.36-acre tract of land at the time of the eminent domain suit was filed was being used by the appellee W. R. Roche, Sr., as a cattle farm and for the growing of pecan trees. The farm was traversed by a paved county road running in a general southeasterly and northwesterly direction. The appellee had 63 acres planted in pecan trees with pasture in between the pecan trees. He had 100 acres of pasture and row crop land, including a tung orchard and 20 acres of timber. His property was completely fenced. He had a herd of registered polled Hereford cattle on the land. The appellee had two stock ponds, one on the east, which was to be cut off by the new highway, and one to the northwest. The 26.06 acres of land proposed to be taken for right of way purposes included the dwelling house, garage, barn, water well and pump house owned by the

appellees. After the taking of the 26.06-acre strip for right of way purposes the appellees would have left on the west side of the highway 71 acres of land and on the east side of the highway 94.3 acres.

A special court of eminent domain was organized for the condemnation of the above mentioned strip of land, and a trial was had in that court on July 24, 1962. The jury returned a verdict awarding damages to the landowners in the amount of $42,000, and judgment was entered for that amount. The State Highway Commission thereupon prosecuted an appeal from that judgment to the circuit court, and the case was tried anew in the circuit court at the regular March 1963 term thereof. The jury in the circuit court returned a verdict in favor of the landowners for the sum of $50,000. The appellant filed a motion for a new trial, alleging as grounds therefor that the verdict of the jury was so excessive as to denote bias and prejudice on the part of the jury and was not supported by a preponderance of the evidence. The court overruled the appellant's motion for a new trial and judgment was entered in favor of the appellee landowners for the sum of $50,-000. From that judgment the appellant has prosecuted this appeal, and has assigned as error the action of the trial judge in overruling its motion for a new trial, and also other errors which will be referred to later.

Joe R. Davis, civil engineer for the State Highway Commission, testified that there would be an interchange located at the intersection of the interstate highway with the black top road coming out from Carriere, which was the principal artery of traffic through that area. The local road which was paved would be left as it was. The interstate highway will cross over the local road. Davis stated that there would be about two feet of fill at the south end of the strip of land which was being taken for right of way purposes and the fill would increase in height more or less gradually

as it approached the point where the new highway crosses over the blacktop road. At that point the fill would be about 20 feet high, and a bridge would be constructed to provide an overpass over the county road. At the northeast corner of the appellees' property the fill would be about 7 feet in height. Davis stated that the dwelling house of the appellees had been taken, and also the garage, a barn, a water well and a pump house, all of these were included in the taking of the 26.06 acres of land. He stated that the strip of land taken for right of way purposes was approximately 300 feet wide at the south end, that the width of the right of way increased gradually to the point where the new highway was to pass over the local road; that the width of the right of way at that point was roughly 785 feet. Davis stated that Mr. Roche would have to go to the interchange to cross over from one side of the highway right of way to the other side.

Four witnesses testified for the State Highway Commission concerning the value of the land before and after the taking.

J. W. Morgan, a professional appraiser employed by the Commission, testified that he was a graduate of Mississippi State College in Agriculture Education and had taught agriculture about eight years. He had had two special courses in appraising real estate. He owned and operated a farm at Mozelle in Jones County. He had made appraisals of real estate in Pearl River County. In his opinion the fair market value of Roches' property before the taking of the 26.06-acre strip of land for highway right of way purposes was $59,500; after the taking, $38,500; that his estimate of the damages was $21,000. Charles B. Moore testified that he was a licensed real estate broker; that he had been with F. A. Anderson appraising and buying farm property for the International Paper Company and the Mississippi Power & Light Company; that in his opinion

the fair market value of the Roche property before the taking was $59,200; after the taking, $38,700; that his estimate of the damages was $20,500.

Carle Cooper testified that he was a licensed real estate broker, and that he operated in Pearl River County and Hancock County; that he had lived in Pearl River County all of his life; and that he had made appraisals of real estate for insurance and oil companies, and other clients, including owners of land through which the interstate highway ran. He stated that his estimate of the value of the Roche property before the taking of the strip of land for a highway right of way was $40,900; after the taking, $22,000; that his estimate of the damages was $18,900. Cooper stated that when he made his appraisal of the property he took into consideration recent sales of comparable property in that area, including the sale of the Benton Pigott Place, containing approximately 200 acres which had been sold to Sam Dyer in March 1961 for $42,000; and the property known as the Harrison Penton Place, containing 87 acres, which he had sold recently for $22,500, including the growing tung crop and the equipment. He stated that the Harrison Penton Place was within a quarter of a mile of the Roche Place, and fronted on the same blacktop road as the Roche Place, and was closer to Carriere; that there were tung trees on about 45 acres of the land, and at the time of the sale there was a crop of tung nuts in the trees which were later harvested and sold for about $2,000. On cross-examination Cooper stated that approximately 10 acres of the Harrison Penton Place was in a branch, and approximately 15 acres of the land was unimproved pasture land.

F. L. Arbogast testified that he lived about four miles west of Carriere where he owned a farm containing approximately 230 acres, which was used for raising cattle and tung nuts. He had owned the place since 1943. He was a licensed real estate broker, and had been

engaged in the real estate business since 1958. He stated that he had appraised property for the Veterans Administration, the FHA, the Mississippi Savings and Loan, and other agencies. He had also made appraisals for landowners, for condemnation purposes. He stated that in his opinion the value of the Roche property before the taking was $62,300; after the taking, $44,085; and that the damages amounted to $18,215. He was asked whether in making his appraisal of the Roche property, he had investigated sales that had been made recently of other property similar to the Roche property and in the vicinity of the Roche property. His answer was that there were two parcels of land which had been sold recently; that he was familiar with those properties; and in his opinion they were similar or comparable to the Roche property. One of the two parcels of land almost adjoined the Roche property on the east side. The other parcel of land to the Roche property was situated about three quarters of a mile west of the Roche property. He stated that the soil and everything except the buildings were comparable to the Roche property. He also considered the sale of a 160-acre tract situated three miles south of the Roche property. At this point the court admitted in evidence the deed from Harrison D. Penton to Charles F. White and wife, dated September 13, 1961, and the deed from T. Benton Pigott and wife to Sam Dyer and wife, dated March 29, 1961.

W. R. Roche, Sr., testified he was 71 years old; he had been living on his 191-acre tract of land for about 20 years. The land was approximately 2½ miles east of Carriere, on the Carriere-Caesar blacktop road. He valued his property before the taking at $145,276.50, after the taking, $92,843.50, and the amount of his damages at $52,433. He had one big barn 26 x 41 feet; a garage, 14 x 30 feet, and another small barn 22½ x 24 feet. He had 63 acres of pecan trees with pasture in

between the pecan trees. He had 100 acres of pasture land and land planted in row crops and tung trees, including 20 acres of timber land. His property was completely fenced. He ran a herd of registered polled Hereford cattle on his land. He had two stock ponds. He stated that the property sold by Mr. Benton Pigott to Mr. Sam Dyer in March 1961 joined his land on the southeast. The Pigott land was not comparable to his land. Mr. Pigott did not have pecan trees or the same type of soil. He stated that the house on the Pigott land was a better house than the house on his land. It was a brick house, but he would not say that it was better to live in than his house.

Four witnesses testified for the appellees on the issue of due compensation and damages to be paid to the appellees for the taking of the 26 acres of land for right of way uses.

Otto H. Davis testified that he lived in the northeastern part of Pearl River County; that he was a graduate of Mississippi State College with a B.S. degree; that he had had a considerable amount of experience in appraising property in Pearl River County for the Farmers Home Administration; that he had worked for the Forestry Commission at one time, and after World War II he had served as a veterans' instructor in an "on-the-job training class" at the Lumberton Consolidated Line School; that he was familiar with the market value of property throughout the county. He stated he had made an appraisal of the W. R. Roche property on June 16, 1962, which was prior to the taking of the strip of land for right of way purposes. He stated that, in his opinion, the value of the 191 acres of land before the taking was $113,300; after the taking $61,050; and that the amount of the damages which the landowners were entitled to recover was $52,-250. He stated that, with the exception of three acres down by the side of a branch, the land was of the best

type of land in Pearl River County. It was Orangeburg loam soil. The land was fenced in with woven wire and barbed wire on top. Sixty-three acres were planted in pecan trees, which were well matured trees and in good condition. Approximately 78 acres were devoted to production of tung nuts and pasturage — approximately 30 acres being pasture land. Davis stated that in valuing the land he took into consideration the dwelling house, outhouses, the pump and pump houses which were located on the 26 acres of land being taken, also the pecan trees destroyed and the expense of relocating the fences. On cross-examination Davis was asked whether in arriving at his appraisal valuations he was influenced at all by the recent sales of property similar to or comparable to the Roche property in that area. His answer was, "not for the valuation I had on it." He did not find any recent sales of comparable property.

C. E. Barefoot testified that he lived in Pearl River County, that he had served as a high school superintendent, and had taught at Mississippi Southern College and Pearl River Junior College; that he had served with the Vocational Rehabilitation Division of the State Department of Education for 18 years; that he was a licensed real estate salesman and had been engaged in the real estate business since January 1962. He had appraised farm property and business property and had investigated the sale prices of lands all over Pearl River County. He stated that he appraised the W. R. Roche property on June 16, 1962, about three weeks prior to the institution of the eminent domain suit, and in his opinion the value of the Roche property prior to the taking of the 26 acres for right of way purposes was $123,542, that the after taking value of the property was $73,173, and that the damages amounted to $50,369.

On cross-examination Barefoot was asked whether in making his appraisal he was influenced by recent sales of comparable property in that area. He stated

that he was influenced by a sale of 2½ acres of land close to Carriere at $1000 an acre. It was a sale made by J. C. Ford to the Central Service and Supply Company in April 1962 for $2,500. He had also taken into consideration a sale made by J. S. Lumpkin to Carl Carson of 3 acres of land near Mr. Roche's place for $3,000 on July 1, 1961. Those places were small, but he considered them comparable to the Roche property and he used those sales as a partial basis in arriving at a proper valuation of the Roche property. He stated he did not know about the sale of the Harrison Penton land situated about one-fourth mile west of the Roche property to Charles F. White and his wife on September 13, 1961, but after that sale was mentioned he examined the record and later inspected the property, and he saw no reason for changing his valuation of the Roche land after he had inspected the Harrison Penton property. He stated he did not consider the sale of the Benton Pigott property, lying just east of the Roche place, which was made on March 25, 1961; but after that sale was brought to his attention he inspected the Pigott property and found that it included about 40 acres of swamp land which had timber on it, but it was not the kind of land that could be sold for much money. He stated that the Pigott land did not have the same type of soil as the Roche land.

Ferris E. Tate testified that he was a lifetime resident of Picayune, and had been engaged in the real estate business thirty-five years and maintained a real estate office under the name of Tate Realty Company at his home in Picayune; that he made appraisals of various properties all over the county and had made appraisals in connection with the taking of rights of way for Interstate Highway No. 59; and that he was familiar with the market value of lands all over the county. He stated that the Roche land was level and had a frontage of a quarter of a mile on each side of

a blacktop road two and one half miles from Carriere, and the land was well suited for building sites. He stated that there were two tracts of land on the same road which had been sold recently for more than $1,000 per acre. He estimated the value of the Roche property before the taking to be $90,343; after the taking, $46,-604.50; and the damages, $43,738.50. On cross-examination Tate stated that the two tracts referred to by him as land which had been sold for $1,000 per acre were the 2½-acre lot sold by J. C. Ford to the Central Service and Supply Company for $2,500, and the 3-acre lot sold by J. S. Lumpkin to Carl Carson for $3,000. Tate also mentioned the sale of a 2½-acre lot by Ab McLemore to J. E. Mitchell for $3,500, but on cross-examination it developed that there was a dwelling house on that lot at the time Mitchell bought it. Tate stated that he had not gone over the Benton Pigott place and had made no inspection of the Pigott house, and he did not consider the sale of that property when he made his appraisal of the Roche property.

E. F. Loe testified that he graduated from Louisiana State University with a Forestry degree in 1938; that he had lived in Picayune for a period of 17 years, and that he was operating a real estate business under the name of Ford & Loe Realty Company. Loe stated that he had made an appraisal of the Roche property for the owners; that the property, with one-half mile frontage on a paved road, was very desirable for building sites; that the owner had 63 acres in pecan trees, and the Orangeburg soil was the best type soil in Pearl River County. He stated that, in determining the value of the property before the taking of the strip of land for highway purposes, he considered the value of the 191 acres of land, including the dwelling house and other buildings and improvements; and in determining the value of the land after the taking, he considered the value of the reduced acreage without the buildings

and improvements taken, and also the fact that the property after the taking would be divided into four parcels, and there would be some inconvenience to the owner in having to go through the interchange to get from one side of his place to the other. Loe then stated that, in his opinion, the value of the property before the taking was $85,191, and after the taking, $43,948, and that the landowners were entitled to compensation and damages in the sum of $41,243.

The appellant's attorneys have assigned and argued two main points as grounds for reversal of the judgment of the lower court, as follows: (1) That there is no credible evidence in the record to support the verdict of the jury; and (2) that the verdict of the jury is so grossly excessive as to denote bias and prejudice, and as to shock the enlightened conscience of the court. It is also argued that the two witnesses for the appellee, upon whose testimony the verdict appears to have been based, by their testimony showed that they were not qualified to express a competent opinion as to the before and after value of the Roche property or the amount of damages which should be awarded to the landowners whose land was being taken for public use. Two other points have also been assigned and argued as grounds for reversal of the judgment. But it is not necessary that we consider those two points on this appeal.

We think the verdict of the jury is grossly excessive, so excessive in fact as to require a reversal of the judgment. The only witnesses for the appellees who testified that the appellees were entitled to damages in the amount of $50,000 were the appellee himself and O. A. Davis, who lived some 25 miles from the property, and C. C. Barefoot, a real estate salesman of Lumberton, who testified that in making his appraisal he did not consider recent sales of other properties in the vicinity of the Roche property, which appear from the

testimony of other witnesses to have been comparable in location, size and use.

The testimony of the appellees' other witnesses, Ferris E. Tate and E. F. Loe, clearly indicates that, in their opinion, the amount of damages that the appellees were entitled to recover was far less than $50,000, and their estimates of the damages were approximately double the amounts testified to by the appellant's witnesses. The witnesses Barefoot and Tate admitted that their opinions as to the before and after taking values of the property were not based upon any sales of reasonably comparable property in the vicinity; and none of the appellees' witnesses could refer to a comparable sale to support their appraisals. The testimony of the appellees' witnesses concerning the sale by Spencer Lumpkin to Carl Carson of a three-acre building lot fronting on a blacktop highway about two miles east of Carriere for the sum of $3,000, and the sale of the 2½-acre lot situated in the village of Carriere by J. C. Ford to Central Service and Supply for $2,500, afforded no basis for a valuation of farm property devoted to the growing of pecans and tung nuts and the pasturage of cattle.

The factual situation in this case is entirely different from the factual situation in Mississippi Highway Commission v. Brooks, 239 Miss. 308, 123 So. 2d 423, which is cited by the appellees' attorneys in their brief. In the Brooks case the record showed that the 27-acre parcel of land owned by Brooks lay immediately west of the corporate limits of the City of Hattiesburg, a city of approximately 34,000 population, that the land was situated in an area which was clearly adaptable for residential development, and the evidence clearly indicated that the land would probably be used within a reasonable time for that particular purpose. But such is not the case here. The 191 acres of land owned by the appellees was rural land, far removed from the

centers of population, and the evidence does not go far enough to show a present demand for such land for residential or commercial development or a reasonable expectation of such demand in the near future. 29 C.J.S., p. 1027, Eminent Domain, § 160; State Highway Commission v. Brown, 176 Miss. 23, 168 So. 277.

The testimony of O. A. Davis and C. C. Barefoot as to the value of the Roche property before and after the taking of the 26-acre strip of land for highway purposes, when considered in the light of the undisputed facts disclosed by the record, in our opinion, was not of sufficient probative value to justify a verdict of $50,000. The testimony shows that the appellees' 191 acres of land was well suited for the growing of pecans and tung nuts and for the grazing of cattle. But only 26 acres of the 191 acres were taken for highway purposes. The appellees still own the remaining 165 acres. It is true that there was a severance of the land not taken into two parts by the construction of the interstate highway; but the owners still have available a passage way from one side of their property to the other through the underpass at the intersection of the highway and the blacktop county road.

In view of what we have stated above, we hold that the verdict for $50,000 is so grossly excessive as to evince bias and prejudice on the part of the jury, and the judgment for that amount cannot be affirmed by this Court. Mississippi State Highway Commission v. Rogers, 236 Miss. 800, 112 So. 2d 250; Mississippi State Highway Commission v. Ellzey, 237 Miss. 345, 114 So. 2d 769; Mississippi State Highway Commission v. Taylor, 237 Miss. 847, 116 So. 2d 757; Mississippi State Highway Commission v. Pittman, 238 Miss. 402, 117 So. 2d 197; Mississippi State Highway Commission v. Valentine, 239 Miss. 890, 124 So. 2d 690.

The judgment of the circuit court is therefore reversed and the case is remanded for a new trial on damages,

unless within fifteen days from this date the appellees accept a remittitur of $10,000. In the event the appellees accept such remittitur the judgment will be affirmed as modified, otherwise reversed and remanded.

Reversed and remanded unless the appellees accept the specified remittitur.

*Ethridge, Rodgers, Brady and Patterson, JJ.*, concur.