BRADY, Justice.
This is an eminent domain case filed by appellant, Mississippi State Highway Commission, against appellees, A. J. Ferguson, his wife Daisy D. Ferguson, and their son Hugh S. Ferguson. Appellant seeks to condemn six parcels of land containing in the aggregate 27.34 acres, more or less. The land is located in the Second Circuit Court District of Carroll County, and is needed for use as right-of-way in the location and construction of U. S. Interstate Highway 55. In the Special Court of Eminent Domain, the trial jury awarded a verdict assessing damages in the amount of $12,800. Appellant appealed the case to the circuit court, and a jury returned a verdict fixing damages in the amount of $12,575. The circuit court overruled appellant’s motion for a new trial, and from the judgment appellant now prosecutes this appeal.
The facts essential to disposition of this cause are as follows: Appellees own a farm in Carroll County consisting of approximately 322 acres. This is a good farm, and it is used to grow cotton and corn, and to raise and graze cattle. The farm is well situated, and is being put to its best use by appellees. There are two stock ponds, but only one, approximately two acres in size, holds water the year round. This pond is located in the right-of-way taken by appellant. Improvements on the farm consist of two tenant houses, two barns, and a loading chute, all located in the portion of the *456 farm which will be west of the non-access highway when it is completed.
■ Testimony, together with the maps introduced in this case, clearly shows that-after construction of the proposed highway the farm will be separated into two tracts, one on the east side consisting of 100 acres, and the other on the west side consisting of approximately 195 acres. The land condemned by the highway consists of six parcels. Parcel 1 consists of 25.20 acres, which will be condemned and actually utilized as the roadbed, or right-of-way. Parcels 2 and 3, consisting of 0.12 and 0.68 acres, will be used for an access' right-of-way. Parcel 4, containing 0.17 acres, will be .needed for an easement, together with Parcel 5, containing 0.71 acres, and Parcel 6, containing 0.46 acres. The access acreage totals 0.80 acres, and the easement acreage, 1.34. The right-of-way taken will be approximately 3,200 feet long and will vary in width from 300 to 410 feet. It is a non-access highway, and it will be impossible for appellees to move cattle, farm machinery, or anything else from one tract of land to the other except by leaving the land, proceeding on a country road located north of appellees’ property and using the overpass on this country road which will cross over Interstate 55, and then proceeding down to the tract located on the opposite side.
The record discloses that U. S. Plighway 55 is a four lane highway, with a median dividing the lanes. The median will be 88 feet in width and will extend approximately 3,200 feet. It will be approximately 4 feet lower than the level of the highway, so' that by gravity water will accumulate and drain into the median. The water draining into the median will be drained then onto appel-lees’ land at approximately 500 foot intervals along the 3,200 foot strip. Parcels 2 and 3 will be taken by the appellees 'for the purpose of widening a country road, enabling appellant to reconstruct this road and have it pass over Interstate Highway 55. Parcels 4, 5 and 6 constitute permanent easements, which will be taken for drainage purposes and for construction of drainage structures. Parcels 4 and 5 will be taken so that a-large culvert can be constructed from Parcel 4 under the highway for about 348 feet in length to Parcel 5. Parcel 6 also will be used for the construction of a drain pipe to remove water from the median. The other places where the water will be drained from the. median to the appellees’ land are not shown on the plot, as no other land is being condemned for these purposes. The appellant is taking permanent easements to Parcels 4, 5 and 6, with the right to use them for drainage and to construct thereon any drainage structures it may desire. The taking of permanent easement to these three tracts, instead of taking the fee simple title, leaves the appel-lee with the responsibility of having to pay taxes on them.
The record indicates that appellees’ farm is of a sandy soil nature, and that in the construction of the highway and the building of the fills this land will wash and drain down on appellees’ cotton and other farm lands. The present gravel country road on the north boundary of appellees’ land is also constructed on sandy soil, and has been and is now serving in effect as a drainage ditch to drain water down it and thus keep it off appellees’ land. When the new county road is constructed, raised and hard surfaced, the water from this road rapidly will wash down upon appellees’ land, carrying sand with it into appellees’ crop lands. The 322 acre farm will now be converted into two farms of approximately 100 acres on the east and 195 acres on the west. It is clear from the testimony that appellees will have to fence their land while- the highway is being constructed, and that approximately 8,351 feet of fence will have to be built to keep appellees’ cattle thereon and to protect the crops from damage. The record shows that this is a well-rounded farm with low cropland, good pastures, and some wood land, that, appellees have a number of cattle on their, farm, and that they háve raised a good bit of feed for the cattle. If both farms' are to be used, then two ponds will *457 have to he dug. If the cattle are not to be moved over the county road from one pasture to the other, then a chute will have to be constructed on each tract. Any improvements essential to successful operation of one tract will have to be built on the other tract. This applies not only to cattle raising, but also to farm operations.
Two witnesses testified on behalf of appellant, and three on behalf of appellees, on the question of value and damages.
Appellant’s first witness was T. I. Carroll, a full-time appraiser with the Mississippi State Highway Commission. His experience as a land appraiser consisted of a two weeks course at Southern Methodist University, attendance at a three day seminar and at a one day seminar, and on-the-job training with appellant. He testified that he believed the present market value of appel-lees’ farm to be $44,200 before the taking, $37,485 after the taking, with resulting damage of $6,715. This witness stated he did not take into consideration any damage to the remaining land from water, sand or other material washing on it. This witness took into consideration the agricultural purposes for which the land was used, such as for cattle and row crops. He took into consideration also destruction of the stock pond and allowed for construction of one stock pond. He considered the necessity of building fences, estimating the cost at 15# per foot, for about 7,200 feet of barbed wire. The cost of constructing the pond he estimated to be 20# per cubic yard, and stated that 2000 cubic yards of dirt would be necessary, making the cost $400. He estimated the value of the 26 acres actually taken at $110 an acre, which amounts to $2,860. He valued the easements at $110 an acre, and estimated the 1.34 acres of easement taken would produce $150 in damages. The resultant damages from dividing the land he estimated to amount to $2,225.
Appellant’s second witness was Mr. Sidney Branch, a farmer who resides in Montgomery County. He estimated the value of appellees’ farm before the taking to be $30,000, and after the taking to be $23,70Q, resulting in damages of $6,300. He also took into consideration the fact that 2,000 cubic, yards of dirt would be needed to construct the levee, at 20# per yard. Branch estimated the 26 acres of land taken for the right-of-way to be worth $75 an acre, or a total of $1,950. The easements he valued at 50 percent of $100 an acre, or $70. H'.e estimated that 7,600 feet of fence would be needed at 15# a foot, totaling $1,140. Mr. Branch estimated that because of the splitting of the property, the inconvenience, cost and loss of time in operating both farms for general purposes would result in a loss in value of $2,740. Mr. Branch testified positively that he did not take into consideration, or allow anything for the washing of sand and materials from the various roadbeds onto the remaining lands of appellees, and that he did not take into consideration or allow any damages on account of water which would be thrown upon appellees’ remaining land. This he would not do because he stated he did not know where apr pellant was going to run the water off .of the highway onto appellees’ land.
Appellees’ first witness was Mr. L. K, Moore, Jr., a practicing civil engineer, engaged in the real estate business and jn.the business of appraising lands, having done appraisal work for insurance companies, savings and loan associations for inheritance tax purposes, and for various individua ais. He testified that the present fair market value of appellees’ land would be $55,625 and the after taking value would be $42,279.25, resulting in damages of $13,-345, rounded off. In breaking down these figures Mr. Moore stated that he took into consideration the fact that the farm was being split into two separate and distinct places of operation. He considered the necessity of having to construct 8,351 feet of fence at 20# per foot. He estimated the damage to the cropland from erosion and water and from materials that would be deposited on it by reason of the construction. He considered the fact that appellees *458 would not have improvements or water for cattle on the east side of the highway.
Appellees’ second witness was Mr. Sam Pearson, a 53-year-old resident of Winona, who is a farmer and ex-sawmill operator, presently engaged in building homes and doing appraisal work. He had appraised land for twenty years, and also had had experience in cattle raising, tie testified that in his opinion the fair market value of appel-lees’ farm before the taking was $40,125 and the value after, $25,729.80, with damages of $14,395.20. In determining the amount of damages Mr. Pearson took into consideration the value of the land actually taken, resultant damage from sand washing from the area of the county road onto the farm land, destruction of the stock pond, the fences to be constructed, and the division of the farm into two separate tracts, with resultant effects.
J Appellees’ third witness was Mr. B. B. Sanders, who owns and operates more than 4,000 acres of land in Carroll County. He has bought and sold land in the county and is familiar with the reasonable market value of farm land in Carroll County and the general area of appellees’ land. In passing, neither of appellant’s witnesses has bought or sold any land in Carroll County. Mr. Sanders valued appellees’ land before the taking at $40,125, after the taking at $27,215, and damages at $12,-910. Mr. Sanders is not an engineer and testified he did not know anything about water or sand damage which would result from the highway construction. Therefore, in fixing his values he, as appellant’s witnesses, did not take into consideration any damage of this character. In estimating the value of the land that was being taken he considered the fact that appellant was taking the only pond that affords water to the farm the year round, thus making it necessary for appellees to construct a pond for cattle pastured on the east side of the new highway and a second pond for pasture on the west side of the new highway. He took into consideration the cost of fences to be constructed on each side of Highway 55 and along the boundaries of the land taken for the county road. He considered the fact that appellees had a barn and cattle loading chute in the pastureland, but because of splitting the farm would require the building of a loading chute and improvements on the west side of the proposed highway in order to continue cattle operations. The last and most important factor considered was that the appellees, instead of having a 322 acre tract of land for farm and cattle use which they can operate or sell as a unit, they are going to have two small farms on opposite sides of the highway, destroying the big farm, which would greatly affect the market value of the land.
■ In this cause there is only one issue for determination; that is, whether or not the jury verdict is so grossly excessive as to evince bias, passion, and prejudice. Appellant in its brief cites five cases, namely, Mississippi State Highway Commission v. Roche, 249 Miss. 792, 163 So.2d 874 (1964); Mississippi State Highway Commission v. Valentine, 239 Miss. 890, 124 So.2d 690 (1960); Mississippi State Highway Commission v. Stubbs, 239 Miss. 499, 124 So.2d 281 (1960); Mississippi State Highway Commission v. Ellzey, 237 Miss. 345, 114 So.2d 769 (1959); and Mississippi State Highway Commission v. Trammell, 252 Miss. 413, 174 So.2d 359 (1965). We have carefully considered these cases in comparison with the facts in the case at bar, and we are forced to conclude that each of these cases is easily distinguishable from the case at bar.
In the Roche case only 26 acres of a 191 acre tract were taken by the highway. This tract was used for growing pecan and tung nuts and for grazing cattle. The owners had available a passageway from one side of the property to the other. The verdict in that case was $50,000, and was so grossly excessive as to evince bias and prejudice on the part of the jury and therefore a remittitur of $10,000 was applied, in the Roche case *459 two of appellees’ witnesses testified to damages considerably less than the verdict of $50,000. Also, appellees’ witnesses Bar-field and Tate admitted that their estimate of the before and after taking values of the property were not based on any sales of reasonably comparable property dn the vicinity and that none of the appellees’ witnesses could refer to a comparable sale to support their appraisal. In the case at bar, 27.34 acres of land are being taken, and ap-pellees’ farm is being split into two farms by a non-accessible highway. Yet the verdict herein is for only $12,575. Appellant in the case at bar did not choose to question the appellees’ witnesses as to whether or not their estimates were predicated upon comparable sales. The record reveals nothing in this regard. Furthermore, the amount awarded appellees in the case at bar is far less than the amount in the Roche case, after the remittitur, although in the case at bar the damages to remaining property is apparently far greater than the damages to the appellees’ property in the Roche case.
In the Valentine case, supra, a 28 acre strip of land through a 130 acre cattle farm was condemned, resulting in the separation by a non-access highway of an additional 34 acres from the remaining tract. Although in that case the owners had the permissive right to use a viaduct under the highway to have access to 34 acres cut off, the verdict was for $28,500, and this Court held that the case should be reversed for a new trial on damages unless the appellees accepted a remittitur of $11,000, thus reducing the award to $17,500. In the Valentine case no improvements were taken except some undescribed fences, and only 34 acres were cut off by the highway. We pointed out in the Valentine case that while the witnesses for the appellees had relatively little experience with property and property appraisals, and failed to give any substantial reason to support extremely high estimates, appellant’s witnesses were qualified and experienced appraisers, and gave a reasonable analysis on the basis of their evaluation. The Court, speaking through Justice Ethridge, took into consideration the highly speculative and uncertain profits which Blackledge surmised might be derived from the operation of the cattle farm. We do not find any of these facts to be true or existing in the case at bar. Thirty-four acres are separated in the Valentine case, while 100 acres are separated in the case at bar. Yet the award permitted to stand after remittitur in the Valentine case for the 20 acres actually taken was $875 per acre, whereas the award in the case at bar is slightly more than $459 an acre. In the Valentine case only 20 acres were condemned and actually taken, but in the case at bar 27.34 acres are actually condemned.
In the Stubbs case, supra, appellant condemned 7.18 acres of approximately 15 acres of rural land. We stated in that case that of the approximately 15 acre tract, none of it was in cultivation and none was being used for cattle raising or any other profitable purpose. In that case we held that the testimony of the witnesses as to the values had little or no probative value. In the Stubbs case, we ordered a new trial on damages unless the appellees would remit $1500 of the $5,021 verdict, giving a judgment of $3,521 for the taking of 7.18 acres of unimproved land. The land in the case at bar is of far greater value than the land in the Stubbs case. In the case at bar the land is being put to profitable use of farming and cattle raising, while there was nothing in the Stubbs case to compare with the severance damages in the case at bar by reason of the fact that the 322 acre farm in the case at bar is being separated by the non-access highway into two tracts. In the case at bar the judgment is slightly in excess of $459 per acre for the land taken, while in the Stubbs case, after the remittitur, the award was for a greater amount.
In the Ellzey case, supra, the land involved was pastureland and a wooded area, with no part in cultivation. The right-of-way took 22.43 acres. No comparable land was shown to have been sold in that area for more than $100 per acre. The point was *460 made that witnesses for the appellee did not have qualifications to give a competent opinion as to the amount of damages, but this Court said that since their testimony was allowed to go to the jury without objection, the jury was entitled to consider it for whatever probative value it may have been entitled to, whether it was competent or not. In the Elisey case the highway separated only 49i/¿ acres of a farm not in cultivation from 175 acres, while in the case at bar the non-access highway separates the farm both in cultivation and in use for cattle into two separate tracts. In the Elisey case a verdict of $39,500 was rendered, and no remittitur allowed. Although the severance damages in the Elisey case cannot be compared with the severance damages in the case at bar, the award in the Elisey case was slightly more than $1,761 per acre, while the award in the case at bar, including severance and other damages of all kinds, is less than $460.
In the Trammell case, supra, the appellant condemned 9.93 acres of land which resulted in cutting off from access 26.5 acres of the appellees’ land. Here the land was cutover timberland with no improvements of any kind., It was doing nothing but holding the world together and growing trees. The verdict was for $22,354. This Court reversed the case for a new trial on damages unless appellees agreed to accept a re-mittitur of $4,854, reducing the award to $17,500. We do not have in the case at bar cutover timberland, but we have a good farm, on which crops are being grown and cattle raised. We have also a greater portion of land being separated by the highway than in the Trammell case. There is considerably more severance damage in the case at bar. Yet the award in the case at bar is for $12,575 for the taking of 27.34 acres of land, and the severance and other damages involved, and this is considerably smaller than the award of $17,500 which was permitted to stand in the Trammell case after the remittitur for the taking of only 9.93 acres, and the cutting off from access of 26.5 acres.
In the case of Mississippi State Highway Commission v. Turnipseed, 236 Miss. 764, 111 So.2d 925 (1959), we announced the rule of law which is controlling in this case. In the Tumipseed case the jury returned a verdict of $5,320 after viewing the property. The sole assignment of error there was that the verdict of the jury was against the overwhelming weight of the evidence and so excessive as to evince bias, passion and prejudice. Appellant’s witnesses placed the damages as $3,000 and $3,350 respectively. Sole witness for the appellee placed the value at $6,125. This Court affirmed the verdict of $5,320. We stated in that case:
The argument of the appellant in its final analysis is that because of superior qualifications of the appellant’s two witnesses to testify as to value, their testimony should be accepted and the testimony of the witness for the appellees rejected. It must not be overlooked, however, that the jury viewed the property, and then in the light of the testimony as a whole and their own view of the property, fixed the amount of the award to the appellees. It is significant too that the witness Carter, after stating his qualifications, was permitted to testify without objection upon the ground of any lack of qualification to testify as to value. We think the qualifications of the respective witnesses to testify as to value were, under the facts of this case, a question for the consideration of the jury, and that the sworn testimony of the witness Carter afforded substantial testimony in support of the verdict. It is a general rule that the view by the jury, when taken together with the substantial testimony of sworn witnesses, will preclude a review of the verdict as being contrary to the overwhelming weight of the evidence. (236 Miss, at 766-767, 111 So.2d at 925-926.)
This rule of law was set forth also in Great Atlantic & Pacific Tea Co. v. Davis, 177 Miss. 562, 171 So. 550 (1937), and Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650, 68 *461 A.L.R. 167 (1930). In the case at bar two juries heard the evidence and viewed the premises, and they rendered verdicts. The first jury rendered a verdict for $12,800, and the second jury rendered a verdict for $12,575. When we consider the taking of the 27.34 acres of land of the 322 acre crop and cattle farm, including the only pond thereon furnishing water the year round, the required construction of 8,351 feet of fence, together with the resultant damage to the remaining land from water, sand and overflow material, coupled with the stern fact that this 322 acre farm is now separated into two distinct units of 100 and 195 acres by a non-access highway across which the owners cannot take their cattle or farm implements, it reasonably cannot be said to be an exorbitant verdict. Appellees’ witnesses were quite competent, and their testimony does not evince bias, passion or prejudice. We cannot say that the verdict is so large as to shock our conscience. While members of this Court may not have awarded as high a verdict as was rendered in this case, the trial jury went upon and observed the land and testimony was taken while they were thereon. It is the best judge of the weight and worth of the testimony and also of the amount of damages occasioned to the landowner. While we may differ with the jury in our personal opinions as to the value of the damages, we cannot in good conscience say that it is so excessive as to evince bias, passion and prejudice, and for these reasons, the verdict is affirmed. Lee v. Indian Creek Drainage Dist. #1, 246 Miss. 254, 148 So.2d 663 (1963); Mississippi State Highway Comm’n v. Strong, 240 Miss. 756, 129 So.2d 349 (1961); Rasberry v. Calhoun County, Miss., 230 Miss. 858, 94 So.2d 612 (1957); City of Jackson v. Landrum, 217 Miss. 10, 63 So.2d 391 (1953); Mississippi State Highway Comm’n v. Treas, 197 Miss. 670, 20 So.2d 475 (1945); Mississippi State Highway Comm’n v. Williamson, 181 Miss. 399, 179 So. 736 (1938).
Affirmed.
GILLESPIE, P. J., and RODGERS, PATTERSON and SMITH, JJ., concur.