BROOM, Justice, for the Court:
Eminent domain proceedings were instituted by Mississippi Power Company (MPC) against Clarence E. McDonald and Ruth T. McDonald, husband and wife, in a Special Court convened in Clarke County, Mississippi. MPC took from the McDonalds a right of way easement 100 feet in width across two forties of land. During the trial, the entire court including the jury viewed the property after which the McDonalds were awarded a verdict and judgment for $20,-000. MPC has appealed contending (1) the jury award is excessive and against the overwhelming weight of the evidence and (2) the trial court erred in admitting the testimony of appraiser Jack Pogue whose testimony is unrelated to any comparable sale. We reverse.
The main part of the easement taken is a strip of land 100 feet in width extending 2,433.6 feet across two forties. MPC is to have a right to keep the 100-foot strip clear and cut danger trees from adjacent property. Upon the strip MPC is to have the right to erect certain structures: poles, wires, etc.
Consisting of 185 acres, the property of the McDonalds, according to them, is a highly developed homestead upon which 35 acres is devoted to bahia grass as improved pasture. Most of the remaining 150 acres appears to be given over to growing pine trees. The testimony shows that other improvements situated upon the property in the main are the following: (1) a 7 — year old residence; (2) a water well approximately IV2 years old; (3) a 560 square foot workshop; (4) a 420 square foot storehouse; (5) a 1,120 square foot pole shed; (6) a two-story 28 by 40 foot hay barn; (7) a mobile home; (8) a 220 square foot crib; (9) a IV2 acre cattle and fish pond; (10) a dam (broken in 1974) which created a 13 to 15 acre lake, and (11) approximately 6 miles of fencing and cross-fencing. A paved road bounds the property on the South, and there is another public road to the West. Testimony of the McDonalds is that the land, about four miles from Quitman, is largely high, dry and beautiful land suitable for recreation and rural homesites. Churches, schools, a community water system, and electric power are in the area.
*139 Not counting the right to cut danger trees adjacent to the 100-foot strip, approximately 5.58 acres of land are involved. Although Mr. McDonald will not be permitted to grow trees on the strip or construct buildings on it, he may continue to use the surface of the land to a substantial degree. Apparently no fences are to be built along the right of way and it does not appear to cut off or divide the property.
The Farmers Home Administration has a deed of trust on the property, and the parties have stipulated that an agreement has been made as to the disposition of funds derived from this action.
Testifying as an expert witness for MPC was H. M. Brunson, a real estate broker with thirty years experience-twenty-five years as an appraiser. He said that the highest and best use of the property was as a farmstead which includes a home, a place for a garden, stock pond, a source of firewood, open land to raise cattle, timber for a cash product, and everything that a farmer could desire as a small farmstead without having a big operation. After making his appraisal, he arrived at a before and after value, taking into consideration all improvements and everything else on the property. In summarized fashion, his evaluation and estimate of damages appear subsequently herein along with that given by other witnesses.
Brunson’s testimony was related to comparable sales of land, and he valued the land generally at about $800 per acre. A nice stand of timber is on the land according to McDonald. Brunson opined that the McDonald property would cost too much to develop for a subdivision in order to build homesites thereon.
Also testifying for MPC was Frank A. McLendon, an experienced appraiser, who had appraised for governmental agencies in the past. This witness related his testimony to recent comparable sales and stated that the power line would not affect the lake which had previously existed on the property before the dam deteriorated. According to him, some of the land would be suitable for homesites along the paved highway but parts of the land were unsuitable.
The landowner, Mr. McDonald, testified. In general, he established the physical attributes of the property, and stated that he cleared some of the land and planted pines. Marion Phillips, a graduate forester, testified for the McDonalds. His testimony was mostly general in nature and did not get at the value proposition. The main testimony given on behalf of appellee as to value was that of Jack Pogue, a bank vice-president who appraises real estate for the bank. He testified that the highest and best use of the property would be to divide it into three-acre homesites. He said the land could feasibly be divided into such home-sites valued at $7,500 each. In computing his values, he said that he was not considering the land as 5.58 acres but was considering 16.5 acres because the guy lines extend 30 feet off the right of way and he also bases his value on the danger tree aspect of the case.
Summarized, the testimony of the chief witnesses concerning value and damages may be stated as follows:
For MPC:
Value Before Value After Resulting Damage
H. M. Brunson, Appraiser
$180,500.00 $173,737.00 $6,770.00
(Rounded off)
Frank A. McLendon, Appraiser and Local Landowner
$150,000.00 $144,368.80 $5,631.20
For Appellees:
Clarence E. McDonald, Owner
$491,000.00 $424,000.00 $67,000.00
Jack Pogue, Local Bank Vice-President
$450,000.00 $400,000.00 $50,000.00.
Our view upon the whole record is that the amount of the verdict is excessive and not responsive to the evidence. It is undisputed that in taking the easement, MPC will not destroy or cause to be destroyed any of the improvements upon the Mc-Donalds’ property. Apparently, the use of any of the improvements will not be substantially hindered or impaired. The expert testimony given on behalf of MPC is based upon logic and is related to comparable sales giving due consideration to the entire *140 context of the case presented by the testimony. We think the record is clear that only 5.58 acres will actually be taken by MPC for its fight of way to be cleared of all timber and trees although MPC will continue to have the right to cut danger trees from adjacent land. Landowner McDonald and his witness Pogue indicated that MPC was actually taking a strip 300 feet wide or 16.5 acres and not 5.58 as was insisted upon by the MPC witnesses. MPC’s witness Brunson gave the highest and best use of the property as a place for a home, garden, and cattle and timber raising activities. Its witness McLendon considered timber growing, cattle grazing, and farming as the highest and best use of the property. Landowner McDonald did not give precise testimony as to the highest and best use of the property while on the witness stand, but his statement of value filed indicated his highest and best use would be for rural homesites and recreational purposes. His witness Pogue testified that the highest and best use would be for three-acre homesites valued at $7,500 each.
It is highly significant that neither landowner McDonald nor his witness Pogue adequately related their evaluations to comparable sales within the area. We are unable to find, and the landowner has failed to point out testimony in the record, as to how their witnesses arrived at the evaluations they gave on the property so far as comparable sales and relevant information are concerned.
Similar questions were at issue in Miss. State Hwy. Comm. v. Valentine, 239 Miss. 890, 894-5, 124 So.2d 690, 692, 693 (1960). Valentine states:
The witnesses for the Commission were qualified and experienced appraisers, and gave a reasoned analysis of the basis of their valuations. On the other hand, the witnesses for appellees had relatively little experience in property appraisals, and failed to give any substantial reasons to support their extremely high estimates of the value of this 138-aeres cattle farm before the taking, or of the damages.
* * * * * *
However, the test is the fair market value of the land before and after the taking, and does not include the highly speculative and uncertain profits which may be derived from a business. Mississippi State Highway Commission v. Rogers, 236 Miss. 800, 112 So.2d 250 (1959); Mississippi State Highway Commission v. Ellzey, 237 Miss. 345, 114 So.2d 769 (1969). Neither of appellees’ witnesses could give any comparable sales of reasonably comparable property in the area to support their appraisals.
* * * * * *
The gross excessiveness of these figures and the jury’s verdict becomes particularly apparent when it is noted that no improvements whatever are taken, except some undescribed fences; and appel-lees’ witnesses could give no comparable sales to support their appraisals. (Emphasis added).
Also in point in Miss. State Highway Comm. v. Baker, 241 Miss. 738, 742, 133 So.2d 277, 278 (1961). There the Highway Commission was condemning land outright but taking none of the improvements situated upon the land although it would be necessary to construct some new fences. Pertinent here is language of Lee, P. J., from Baker:
[B]ut it must be remembered that this land is 3V¡> miles from town. Consequently it cannot be viewed as townsite property. Moreover, the value of this acreage must be determined from the uses to which it is adaptable, namely, farming, raising cattle, and growing timber. The evidence did not show that the productivity of this land for its adaptable purposes warranted the values which were placed on it by the landowners’ witnesses.
******
■However, the witnesses for the landowners advanced no sound reasons to justify their astronomical figures either as to the value of the property or as to the damage which will result from this taking.
*141 Based upon the scarcity of appropriate evidence as to values and damages on the part of the McDonalds’ witnesses, we think the amount of the verdict was not justified by the evidence, and retrial is necessary. At retrial care should be exercised to the end that expert witnesses on land values will relate their testimony to comparable land sales. Mississippi State Highway Commission v. Saulters, 195 So.2d 505, 506 (Miss.1967).
REVERSED AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.
PATTERSON, C. J., takes no part.